**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Microtel Inns and Suites Franchising, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICROTEL INNS AND SUITES FRANCHISING, INC., a Georgia Corporation,<br><br>        Plaintiff,<br><br>V.A.L. ENTERPRISES, INC., a Virginia Corporation; CHHAYA PATEL, an individual; JAYESH D. PATEL, an individual; and DINESH S. PATEL, an individual,<br><br>        Defendants. | Civil Action No. 14-<br><br>**VERIFIED COMPLAINT** |

Plaintiff Microtel Inns and Suites Franchising, Inc., by its attorneys, LeClairRyan, complaining of defendants V.A.L. Enterprises, Inc., Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel, says:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Microtel Inns and Suites Franchising, Inc. ("MISF") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Parsippany, New Jersey.

2.      Defendant V.A.L. Enterprises, Inc. ("VAL"), on information and belief, is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business at 521 North Cedar Bluff Road, Knoxville, Tennessee 37923.

3.      Defendant Chhaya Patel, on information and belief, is a principal of VAL and a citizen of the State of Tennessee, having an address at 101 Brookwood Drive, Bristol, Tennessee 37620.

4.      Defendant Jayesh D. Patel, on information and belief, is a principal of VAL and a citizen of the State of Tennessee, having an address at 521 North Cedar Bluff Road, Knoxville, Tennessee 37923.

5.      Defendant Dinesh S. Patel, on information and belief, is a principal of VAL and a citizen of the State of Tennessee, having an address at 521 North Cedar Bluff Road, Knoxville, Tennessee 37923.

6.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Microtel® Marks

8.      MISF is one of the larger guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

9.      MISF has the exclusive right to sublicense the use of the service marks MICROTEL, MICROTEL INN & SUITES BY WYNDHAM, and various related trade

names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Microtel® Marks"), as well as the distinctive Microtel® System, which provides guest lodging services to the public under the Microtel® name and certain services to its sublicensees, including a centralized reservation system, advertising, publicity, and training services.

10.    MISF or its predecessors first used the MICROTEL mark in 1988 and the Microtel® Marks are in full force and effect.  Certain of the registered Microtel® Marks are incontestable pursuant to 15 U.S.C. § 1065.

11.    MISF has given notice to the public of the registration of the Microtel® Marks as provided in 15 U.S.C. § 1111.

12.    MISF uses or has used the coined term "Microtel," among others, as abbreviations of its brand name.

13.    Through its franchise system, MISF markets, promotes, and provides services to its guest lodging licensees throughout the United States.  In order to identify the origin of their guest lodging services, MISF allows its sublicensees to utilize the Microtel® Marks and to promote the Microtel Inn & Suites by Wyndham® brand name.

14.    MISF has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Microtel® Marks as distinctly designating Microtel Inn & Suites by Wyndham® guest lodging services as originating with MISF.

**The Agreements Between The Parties**

15.     On or about April 5, 2000, MISF entered into a license agreement (the "License Agreement") with Dinesh Patel for the operation of a 65-room Microtel® guest lodging facility located at 131 Bristol East Road, Bristol, Virginia 24201, Site No. 29673-79897-1 (the "Hotel"). A true copy of the License Agreement is attached hereto as <u>Exhibit A</u>.

16.     On or about February 4, 2002, MISF, Dinesh Patel, and VAL entered into the Addendum to the License Agreement (the "Addendum") which amended the License Agreement to reflect VAL, rather than Dinesh Patel, as the licensee under the License Agreement. A true copy of the License Agreement is attached hereto as <u>Exhibit B</u>.

17.     Pursuant to section 10.A of the License Agreement, VAL was obligated to operate a Microtel® guest lodging facility for a twenty-year term, during which time VAL was permitted to use the Microtel® Marks in association with the operation and use of the Hotel as part of MISF's franchise system.

18.     Pursuant to section 3.D[1] of the License Agreement, VAL was required to make certain periodic payments to MISF for royalties, marketing/reservation contribution, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

19.     Pursuant to section 3.D(3) of the License Agreement, VAL agreed that interest is payable on the overdue amount "from the due date until paid in full at the lesser rate of one and one-half percent (1.5%) per month or the maximum rate permitted by law."

20.     Pursuant to section 6.A of the License Agreement, VAL was required to prepare and submit monthly reports to MISF disclosing, among other things, the amount of gross

---

[1] On January 25, 2008, the parties entered into the Third Addendum to License Agreement, a true copy of which is attached hereto as <u>Exhibit C</u>, which amended the total royalty fee VAL was required to pay to MISF under section 3.D(1) of the License Agreement.

4

room revenue earned by VAL at the Hotel in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to MISF.

21.    Pursuant to section 6.B of the License Agreement, VAL agreed to maintain at the Hotel accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Hotel and, pursuant to section 6.C of the License Agreement, VAL agreed to allow MISF to examine, audit, and make copies of the entries in these books, records, and accounts.

22.    Pursuant to section 10.B(2) of the License Agreement, MISF could terminate the License Agreement, with notice to VAL, in the event VAL, or its guarantors, did not, among other things, pay any amount due MISF under the License Agreement.

23.    Pursuant to section 10.D of the License Agreement, VAL agreed that, in the event of a termination of the License Agreement, it would pay liquidated damages to MISF in accordance with a formula specified in the License Agreement.

24.    Section 10.C of the License Agreement specified VAL's obligations in the event of a termination of the License Agreement, including its obligation to cease using all of the Microtel® Marks within ten (10) days of the effective date of the termination of the License Agreement.

25.    Pursuant to section 10.C of the License Agreement, VAL agreed that it would pay all costs and expenses incurred by MISF in enforcing the de-identification provisions of the License Agreement, including, but not limited to, attorneys' fees.

26.    Effective as of the date of the License Agreement, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel provided MISF with a guaranty (the "Guaranty") of VAL's

obligations under the License Agreement. A true copy of the Guaranty is attached hereto as Exhibit D.

27.     Pursuant to the terms of the Guaranty, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel agreed, among other things, "to be personally bound by each and every covenant, term, condition, agreement and undertaking (including, without limitation, the timely payment and performance of all of [VAL's] obligations under the License Agreement), contained and set forth in the License Agreement."

28.     Pursuant to the terms of the Guaranty, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by MISF in enforcing its rights or remedies under the Guaranty or the License Agreement.

### The Defendants' Defaults and Termination

29.     VAL repeatedly failed to timely meet its financial obligations to MISF under the License Agreement.

30.     By letter dated January 15, 2013, a true copy of which is attached hereto as Exhibit E, MISF advised VAL that (a) it was in breach of the License Agreement because it owed MISF approximately $113,268.25 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination.

31.     By letter dated March 5, 2013, a true copy of which is attached hereto as Exhibit F, MISF advised VAL that (a) it was in breach of the License Agreement because it owed MISF approximately $125,470.18 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination.

32.    By letter dated March 22, 2013, a true copy of which is attached as <u>Exhibit G</u>, MISF terminated the License Agreement effective March 22, 2013 and advised VAL that (a) it had to de-identify the Hotel within ten (10) days from the termination date, (b) it was required to pay to MISF as liquidated damages for premature termination the sum of $40,790.79 as required under the License Agreement, and (c) demand was made for all outstanding Recurring Fees through the date of termination.

33.    The termination of the License Agreement precludes VAL from any further use of the Microtel® Marks in or around the Hotel.

34.    The termination of the License Agreement precludes VAL from any further use of the Microtel® Marks to induce the traveling public to use the Hotel in any way.

35.    Since the termination of the License Agreement, VAL has continued to use the Microtel® Marks to induce the traveling public to rent guest rooms at the Hotel.

36.    Since the termination of the License Agreement, VAL has used the Microtel® Marks without authorization to rent rooms through, among other things, failure to remove Microtel® signage and continuing to identify the Hotel as a Microtel® guest lodging facility.

37.    VAL has continued to misuse the Microtel® Marks despite receiving notification from MISF to cease and desist from the misuse of the Microtel® Marks.

### FIRST COUNT

38.    MISF repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 37 of the Verified Complaint.

39.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in

commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

40.     VAL marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Hotel through the unauthorized use of the Microtel® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

41.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

42.     The acts of VAL in marketing, promoting, and renting rooms at the Hotel, through and with the Microtel® Marks, constitute:

(a)     a false designation of origin;

(b)     a false and misleading description of fact; and

(c)     a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of VAL's Hotel with MISF, and to cause confusion, or to cause mistake, or deception, to the effect that MISF sponsors or approves of the guest lodging services that VAL provides at the Hotel, all in violation of Section 43(a) of the Lanham Act.

8

43.    Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

44.    VAL's use of the Microtel® Marks in connection with goods and services at the Hotel, after the Microtel® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Microtel® Marks, and lessened and will continue to lessen the capacity of the Microtel® Marks to identify and distinguish the goods and services of MISF, all in violation of Section 43(c) of the Lanham Act.

45.    VAL's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

46.    VAL's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on MISF.

47.    MISF has no adequate remedy at law.

48.    No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), MISF demands judgment against VAL:

(a)    Preliminarily and permanently restraining and enjoining VAL, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act

in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Hotel through and with the Microtel® Marks; and

        (b)     Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

49.     MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 48 of the Verified Complaint.

50.     Pursuant to section 6.C of the License Agreement, VAL agreed to allow MISF to examine, audit, and make copies of VAL's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Hotel.

51.     VAL has engaged in acts and practices, as described, which amount to infringement of the Microtel® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

52.     As a result, VAL owes restitution and the disgorgement of profits, in an amount unknown to MISF, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from VAL.

**WHEREFORE,** MISF demands judgment ordering that VAL account to MISF for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Hotel through and with the Microtel® Marks.

## THIRD COUNT

53.    MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Verified Complaint.

54.    By letter dated March 22, 2013, MISF terminated the License Agreement effective March 22, 2013 due to VAL's repeated failure to timely meet its financial obligations to MISF under the License Agreement.

55.    Section 10.D of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, VAL shall pay liquidated damages to MISF.

56.    As a result of the termination of the License Agreement, VAL is obligated to pay MISF liquidated damages in the amount of $40,790.79, as calculated pursuant to section 10.D of the License Agreement.

57.    Notwithstanding MISF's demand for payment, VAL has failed to pay MISF the liquidated damages as required in section 10.D of the License Agreement.

58.    MISF has been damaged by VAL's failure to pay liquidated damages.

**WHEREFORE**, MISF demands judgment against VAL for liquidated damages in the amount of $40,790.79, together with interest and costs of suit.

## FOURTH COUNT

59.    MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 58 of the Verified Complaint.

11

60.    By virtue of the premature termination of the License Agreement, MISF sustained a loss of future revenue over the remainder of the twenty-year term of the License Agreement.

61.    If the Court determines that VAL is not liable to pay MISF liquidated damages as required by section 10.D of the License Agreement then, in the alternative, VAL is liable to MISF for actual damages for the premature termination of the License Agreement.

62.    MISF has been damaged by VAL's breach of its obligation to operate a Microtel® guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, MISF demands judgment against VAL for actual damages in an amount to be determined at trial, together with interest and costs of suit.

### FIFTH COUNT

63.    MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 62 of the Verified Complaint.

64.    Pursuant to section 3.D of the License Agreement, VAL was obligated to remit Recurring Fees to MISF.

65.    Despite its obligation to do so, VAL failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $150,858.38.

66.    VAL's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged MISF.

**WHEREFORE**, MISF demands judgment against VAL for the Recurring Fees due and owing under the License Agreement, in the current amount of $150,858.38, together with interest and costs of suit.

## SIXTH COUNT

67.   MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Verified Complaint.

68.   At the time of the termination of the License Agreement, VAL was obligated to pay MISF Recurring Fees.

69.   Despite its obligation to do so, VAL failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $150,858.38.

70.   In addition, VAL benefited from its wrongful use of the Microtel® Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to MISF in return for that benefit.

71.   VAL's failure to compensate MISF constitutes unjust enrichment and has damaged MISF.

**WHEREFORE**, MISF demands judgment against VAL for the Recurring Fees due and owing under the License Agreement, in the current amount of $150,858.38, and all royalties and other Recurring Fees that should be paid to compensate MISF for the period during which VAL misused the Microtel® Marks and was thereby unjustly enriched, together with interest and costs of suit.

13

## SEVENTH COUNT

72.    MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 71 of the Verified Complaint.

73.    Pursuant to the terms of the Guaranty, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of VAL under the License Agreement.

74.    Despite their obligation to do so, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel have failed to make any payments or perform or cause VAL to perform each obligation required under the License Agreement.

75.    Pursuant to the Guaranty, Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel are liable to MISF for VAL's liquidated damages in the amount of $40,790.79, or actual damages in an amount to be determined at trial, and VAL's Recurring Fees due and owing under the License Agreement, in the current amount of $150,858.38, and for those additional Recurring Fees attributable to the period during which VAL has misused the Microtel® Marks.

**WHEREFORE**, MISF demands judgment against Chhaya Patel, Jayesh D. Patel, and Dinesh S. Patel for damages in the amount of:

(a) All liquidated damages, or actual damages, and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit; and

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate MISF for the period during which VAL misused the Microtel® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

14

## EIGHTH COUNT

76.     MISF repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Verified Complaint.

77.     By letter dated March 22, 2013, MISF terminated the License Agreement effective March 22, 2013 due to VAL's repeated failure to timely meet its financial obligations to MISF under the License Agreement.

78.     Section 10.C of the License Agreement provides that, when the License Agreement is terminated, VAL must de-identify the Hotel within ten (10) days of the effective date of termination of the License Agreement.

79.     If the Hotel is not de-identified within ten (10) days of the effective date of termination of the License Agreement, MISF has the right, at VAL's expense, to enter upon the premises of the Hotel for that purpose.

80.     VAL continues to market, promote, and rent rooms at the Hotel through the unauthorized use of the Microtel® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

81.     VAL's unauthorized use of the Microtel® Marks has inflicted and continues to inflict irreparable harm on MISF.

**WHEREFORE**, MISF demands judgment declaring that MISF, or its authorized agent, has the right, to enter the property at the Hotel and remove any and all exterior signage, exterior items and other exterior materials displaying the Microtel® Marks.

LeClairRyan
Attorneys for Plaintiff,
Microtel Inns and Suites Franchising, Inc.

By: _____
     **BRYAN P. COUCH**

Dated: 3|28|14

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other

action pending in any court or of any pending arbitration or administrative proceeding.

LeClairRyan
Attorneys for Plaintiff,
Microtel Inns and Suites Franchising, Inc.

By: _____
     **BRYAN P. COUCH**

Dated: 3|28|14

## VERIFICATION

STATE OF NEW JERSEY        )
                          ) ss:
COUNTY OF MORRIS          )


       Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

       I am Senior Director of Contracts Compliance for Microtel Inns and Suites Franchising, Inc., which is plaintiff in this action.

       I have read the foregoing Verified Complaint and all the allegations contained therein.  Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of MISF or information available through employees of MISF.


                                                **SUZANNE FENIMORE**


Sworn and subscribed to before
me this 13th day of March, 2014




NOTARY PUBLIC

17

# EXHIBIT A

Location:      Old Airport Road and I-81
               Bristol, VA

Hotel Name:    Bristol (Old Airport Road)

ID Number:     2654

Date:          April 5            , 2000

MICROTEL INN & SUITES LICENSE AGREEMENT

between

MICROTEL INNS AND SUITES FRANCHISING, INC.

and

DINESH PATEL



## TABLE OF CONTENTS

PAGE

THE LICENSE ......................................................................................................... 1
GRANT OF LICENSE ............................................................................................. 2
LICENSEE'S RESPONSIBILITIES ....................................................................... 2
LICENSOR'S RESPONSIBILITIES ...................................................................... 5
PROPRIETARY RIGHTS ....................................................................................... 6
RECORDS AND AUDITS ...................................................................................... 7
INDEMNITY AND INSURANCE ......................................................................... 7
TRANSFER ............................................................................................................... 9
CONDEMNATION AND CASUALTY .............................................................. 11
TERMINATION .................................................................................................... 12
RENEWAL .............................................................................................................. 15
RELATIONSHIP OF PARTIES ........................................................................... 15
MISCELLANEOUS ............................................................................................... 16
GUARANTY ........................................................................................................... 20
ATTACHMENT A ................................................................................................. 21
ATTACHMENT B ................................................................................................. 22
ATTACHMENT C ................................................................................................. 23
STATE-SPECIFIC AMENDMENTS ................................................................... 25

# LICENSE AGREEMENT

This license agreement ("Agreement" or "License Agreement"), dated April 5, 2000, is entered into by and between Microtel Inns and Suites Franchising, Inc., a Georgia corporation having an address at 13 Corporate Square, Suite 250, Atlanta, Georgia 30329 ("we," "our," "us" or "Licensor"), and DINESH PATEL, an individual, having an address at 1973 Lee Highway, Bristol, VA 24201 ("you," "your" or "Licensee"). In consideration of the following mutual promises, the parties agree as follows:

1.    *The License.*

We have the exclusive right to license a unique concept and system (the "Hotel System") to establish and operate economy-budget hotels under the names "Microtel Inn," "Microtel Inn and Suites" and "Microtel Suites" (collectively, "Hotels" or "Microtel Hotels"). Before signing this Agreement, you have read our Offering Circular for Prospective Franchisees ("UFOC") and independently evaluated and investigated the risks of investing in the hotel industry generally and purchasing a Microtel franchise specifically, including such factors as current and potential market conditions, owning a franchise and various competitive factors. Following your investigation, you wish to enter into this Agreement to obtain a license to use the Hotel System to operate a Microtel Inn & Suites hotel located at Old Airport Road and I-81, Bristol, VA, (the "Hotel").

A.    The Hotel.    The Hotel includes all structures, facilities, appurtenances, furniture, fixtures, equipment, entry, exit and parking areas located on the real property identified on Attachment A hereto or any other real property we approve for Hotel expansion, signage or other facilities. You agree not to make any material changes to the Hotel without our prior written consent, including, but not limited to, any change in the number of rooms or suites at the Hotel ("Guest Rooms").

B.    The Hotel System.    We have designed the Hotel System so that the public associates the Hotels with high quality standards. The Hotel System includes, without limitation: (i) the tradenames, trademarks, and service marks "Microtel Inn," "Microtel Inn and Suites" and "Microtel Suites" and such other tradenames, trademarks, and service marks we hereafter designate for use with the Hotel System (collectively, the "Proprietary Marks"); (ii) prototypical architectural plans, designs and layouts, including, without limitation, site, floor, roof, plumbing, lobby, electrical and landscape plans; (iii) a national toll free number system for central reservation referrals, as renovated by us from time to time (collectively, the "CRS"); (iv) the national Microtel directory (the "National Directory"); (v) management, personnel and operational training programs, materials and procedures; (vi) standards and specifications for operations, marketing, construction, equipment and furnishings described in our confidential manuals, as amended by us from time to time (collectively, the "Manual"); and (vii) marketing, advertising and promotional programs.

2.    *Grant of License.*

We hereby grant to you a license (this "License") to use the Hotel System to build and operate the Hotel in accordance with the terms of and commencing on the date of this Agreement and terminating as provided in Paragraph 10 (the "License Term"). During the License Term, neither we nor any of our affiliates or franchisees will develop or license any Microtel Hotels within the area described in Attachment B (the "Territory"). This Agreement does not limit our right, or the rights of our parent,

subsidiaries or affiliates, (i) to use or license others to use any part of the Hotel System outside the Territory; (ii) to conduct other business activities under, or license others to use, hospitality brands that are not part of the Proprietary Marks, whether outside or within the Territory, even if the other brands or business activities compete with the Hotel and/or the Hotel System; or (iii) to use or license others to use the Hotel System within the Territory to replace any previously executed Microtel Hotel license agreement. Continuation of your Territory depends on being in compliance with your License Agreement. Your Territory will expire upon the issuance of a notice of default and termination and your failure to cure the default in the time permitted, or upon termination of the License Agreement.

3.    *Your Responsibilities.*

    A.    <u>Operational and Other Requirements</u>.  During the License Term, you agree to:

    (1)    maintain the Hotel in first class condition and in a clean, safe and orderly manner;

    (2)    provide efficient, courteous, and high-quality service to the public while maintaining a high moral and ethical standard and atmosphere at the Hotel;

    (3)    operate the Hotel twenty-four (24) hours a day, every day;

    (4)    strictly comply in all respects with our requirements concerning:

        (a)    the Hotel System, the Manual and all other policies and procedures we communicate to you;

        (b)    our quality standards and the types of services, products and amenities you may use, promote or offer at the Hotel;

        (c)    your use of the Proprietary Marks and display, style and type of signage;

        (d)    directory and reservation service listings of the Hotel; and

        (e)    your participation in all of our marketing, reservation service, advertising, Internet, computer, training and operating programs, including a property management system that interfaces with the CRS or any other central reservation system we adopt;

    (5)    execute our then-current software license agreement, including payment of a $1500 software license fee, , to participate in, connect with and use the CRS;

    (6)    except as provided in Paragraph 4E, adopt all changes we make to the Hotel System;

    (7)    strictly comply with all governmental requirements, including: (i) the payment of taxes; (ii) the filing and maintenance of trade or fictitious name registrations; and (iii) the filing and maintenance of all licenses and permits to operate the Hotel;

    (8)    permit our representatives to inspect the Hotel at any time and provide them free lodging during the inspection period;

    (9)    not use the Hotel or the Hotel System to promote a competing business or other lodging facility;

    (10)    use your best efforts to create a favorable response to the names "Microtel Inn," "Microtel Inn and Suites" and "Microtel Suites";

    (11)    promptly pay to us and/or our parent, subsidiaries and affiliates when due all royalties and fees owed under this Agreement;

(12)   treat the Manual and any other information or materials we designate as confidential ("Confidential Materials") and not duplicate, circulate or distribute any Confidential Materials to any unauthorized person without our prior written consent;

(13)   obtain from each employee who will have access to any Confidential Materials his/her written agreement to keep the Confidential Materials confidential; and

(14)   conduct your advertising in a dignified manner. At our request, you agree to submit to us all advertising and promotional materials and immediately discontinue your use of any materials we reasonably reject.

B.    Performance of the Work. As a primary inducement for us to enter into this Agreement, you agree to perform the work listed on Attachment C (the "Work") in strict accordance with our specifications.

C.    Upgrading of the Hotel. If at any time the Hotel falls below the quality standards set forth in the Manual, we may require you to upgrade or renovate the Hotel to reach acceptable standards. Your failure to upgrade or renovate the Hotel promptly after we notify you to do so may result in our issuing a quality default notice which could lead to our terminating this Agreement.

D.    Fees.

(1)    For each month (or part of a month) during the License Term, beginning with the date the Hotel opens for business (the "Opening Date"), you shall pay to us by the tenth (10th) day of the following month:

(a)    a "Royalty Fee" equal to the following percentages of Gross Room Revenues (as defined in Paragraph 3D(2)) of the Hotel: (i) four percent (4%) during the first twelve (12) month period following the Opening Date ("Year 1"); (ii) five percent (5%) during the twelve (12) month period following Year 1 ("Year 2"); and (iii) six percent (6%) for each month after Year 2 until the expiration or sooner termination of this Agreement;

(b)    a "Marketing/Reservation Contribution" ("Contribution") equal to the following percentages of Gross Room Revenues of the Hotel: (i) three percent (3%) during Year 1; (ii) two and one-half percent (2.5%) during Year 2; and (iii) two percent (2%) thereafter until the expiration or sooner termination of this Agreement. Beginning in Year 3, we may, at any time, increase your Contribution only if: (i) we simultaneously impose a similar increase on all other Microtel Hotel licensees whose license agreements contain fee provisions similar to this Paragraph 3D; and (ii) at least sixty-six percent (66%) of the open Microtel Hotels (one vote per open Hotel) agree to such an increase; and

(c)    any sales, gross receipts, or similar tax imposed on us and calculated solely on any payment required under this Agreement, unless the tax is an optional alternative to an income tax otherwise payable by us.

5

(2)     "Gross Room Revenues" shall mean gross receipts attributable to or payable for the rental of Guest Rooms, including, without limitation, the net proceeds of use and occupancy and business interruption, rent loss, or similar insurance held by you with respect to the Hotel. However, insurance proceeds are included in Gross Room Revenues only if you actually receive them. Gross Room Revenues do not include gratuities to employees or service charges levied in lieu of such gratuities which are payable to employees, or any taxes or fees collected by you for transmittal to any taxing authorities.

(3)     If we require, you agree to make your monthly payments to a designated bank account by telegraphic transfer, automatic debit arrangement, or other means we specify. We will pay for the cost of connection to such telegraphic or automatic debit service. If an automatic debit or similar arrangement is utilized and funds are insufficient to cover your payment obligation, any amounts unpaid on or before the due date shall be deemed overdue. If any payment is overdue, in addition to the overdue amount, you shall pay us interest on the overdue amount from the due date until paid in full at the lesser rate of one and one-half percent (1.5%) per month or the maximum rate permitted by law. Our ability to charge interest on all overdue amounts shall be in addition to any other remedies we may have as a result of your failure to make payments when due.

(4)     You agree to pay us a $2,500.00 fee each time you apply to us to add any Guest Rooms to the Hotel.

(5)     Subject to our requirements and at your own expense, you may conduct local and regional marketing and advertising programs. You shall pay us reasonable fees for optional advertising materials you order from us for these programs.

(6)     You will participate in any global distribution system connected to our CRS and pay applicable commissions to travel agents. You agree to pay: (i) all commissions and fees for reservations you accept through any sources (including the Internet), whether processed through us, our CRS, third party reservation systems, or billed directly to you; and (ii) telephone charges and equipment related to the CRS.

E.     <u>No Right To Offset.</u> Licensee acknowledges and agrees that it will not, for any reason, withhold payment of any Royalty Fees, Contributions or any other fees or payments due Licensor pursuant to this Agreement. Licensee will not have the right to withhold or offset any liquidated or unliquidated amounts, damages or other monies allegedly due Licensee by Licensor against any Royalty Fees, Contributions or any other fees due Licensor under this Agreement.

4.     *Our Responsibilities.*

A.     <u>Training.</u> We provide initial training prior to the Opening Date. During the License Term, we will provide both required and optional training programs. We are responsible for the cost of instruction and you are responsible for all travel, lodging and other training expenses, including reasonable charges for training materials. If any training is held at your Hotel, you agree to provide our representatives with free lodging.

B.     <u>Services.</u> Provided you are in full compliance with your obligations under this Agreement, you shall have access to the CRS, listings in advertising publications and the National Directory.

C.        Consultation on Operations, Facilities and Marketing.  On an ongoing basis, you may consult with us and we shall advise you in connection with Hotel operations, facilities and marketing, including suppliers for fixtures, furnishings, signs and other equipment.

D.        (1)        Microtel Reservations and Advertising Fund, Inc.  by executing this Agreement, you agree to become a member of Microtel Reservations and Advertising Fund, Inc. (the "Fund"), a Georgia not-for-profit corporation with a Board of Directors which holds the Contributions.  Pursuant to the terms of a management agreement, we manage the Fund.  For administrative convenience, we collect the Contributions before passing them on to the Fund.  Copies of the Funds Bylaws and management agreement are available upon request.

(2)        Use of Marketing/Reservation Contributions.  The Fund will use the Contributions to pay for: (i) advertising, promotion, publicity, market research and other marketing programs; (ii) maintaining and producing the National Directory, our Internet site, and the CRS; and (iii) our overhead relating directly to national and local marketing and reservations.  Our overhead is limited to costs associated with the financial management of the Contributions and the salaries and benefits of certain individuals who work for our reservation or marketing departments.  We will neither profit financially from nor use the Contributions to pay for marketing directly related to our sale of franchises. The Fund is not obligated to spend funds for marketing or reservation services exceeding the Contributions received from licensees using the Hotel System.  If the fund has a surplus of Contributions at the end of any taxable year, all expenditures in the following taxable year(s) shall be made first out of earnings accumulated from previous years surplus contributions, next out of current year earnings from surplus contributions, and finally from current year Contributions.  Upon your written request, we will provide you with an annual statement regarding Contributions.

E.        Application of Manual.  All Microtel Hotels must comply with the terms of the Manual, although we may permit limited exceptions based on local conditions or special circumstances.  Each change in the Manual will be explained to you at least thirty (30) days prior to its effective date.  Any change to the Manual which, in our reasonable discretion, would cause a substantial investment by you will not be effective unless approved by sixty-six percent (66%) of the open Microtel Hotels.  Each open hotel shall have one vote and approval of sixty-six percent (66%) of the open hotels will be required to implement the change.  Notwithstanding the foregoing, changes to the Manual which relate to guest security and/or life/safety issues are not subject to the approval of you or other licensees even if substantial investments are required.

F.        Other Arrangements.  We may arrange for development, marketing, operations, administration, technical and support functions, facilities, services and/or personnel with any other entity and may use any facilities, programs, services and/or personnel used in connection with the Hotel System in connection with our other business activities, even if our other business activities compete with the Hotel or the Hotel System.

G.        Inspections/Compliance Assistance.  We have the right to inspect your Hotel at any time, with or without notice to you, to determine if the Hotel is in compliance with the Hotel System and the standards set forth in the Manual.  If the Hotel fails to comply with either, we may, at our option and at your cost, require you to correct the deficiencies within the reasonable time we establish.

5.    Proprietary Rights.

A.        Ownership of the Hotel System and Proprietary Marks.  You acknowledge and shall not contest, either directly or indirectly, either during the License Term or thereafter: (i) our exclusive right

7

to both use and grant licenses to use the Hotel System and any element(s) or component(s) thereof; (ii) that we are the owner or exclusive licensee of all right, title and interest in and to the Proprietary Marks together with the goodwill they symbolize; or (iii) the validity or ownership of the Proprietary Marks. All improvements and additions to or associated with the Hotel System made by you or anyone else and all goodwill arising from your use of the Proprietary Marks shall inure to our benefit and become our property. Upon expiration or termination of this Agreement, no monetary amount shall be attributed to any goodwill associated with your use of the Hotel System or portion thereof.

B.     Trademark Disputes.  We have the sole right to handle third party disputes concerning the use of all or any part of the Hotel System, and you shall, at your reasonable expense, extend your full cooperation to us in all matters relating to the operation of the Hotel. All recoveries made as a result of disputes with third parties regarding use of the Hotel System or any part thereof belong solely to us. We are not required to initiate lawsuits against alleged imitators or infringers and may settle any dispute in our discretion. You shall not initiate any lawsuit or proceeding against alleged imitators or infringers or any other lawsuit or proceeding to enforce or protect the Hotel System without our prior written consent.

C.     Protection of Name and Marks.  Consistent with their ownership rights and rights to use the Proprietary Marks, both parties to this Agreement shall use their reasonable best efforts to protect and maintain the Proprietary Marks and their distinguishing characteristics. You agree: (i) to execute any documents we request to obtain or maintain protection for the Proprietary Marks; (ii) to use the Proprietary Marks only in connection with the operation of your Hotel and only as we instruct; and (iii) that your unauthorized use of the Proprietary Marks shall constitute both an infringement of our rights and a material breach of your obligations under this Agreement. You must notify us immediately, in writing, if you have any actual or constructive knowledge of any infringement or challenge to your use of the Proprietary Marks or any unauthorized use or possible misuse of either the Proprietary Marks, the names "Microtel Inn," "Microtel Inn and Suites" and "Microtel Suites" or any Confidential Materials.

6.     *Records and Audits.*

A.     Monthly Reports.  By the third (3rd) day of each month, you agree to prepare and submit to us a statement for the previous month, certified by your chief financial or principal accounting officer, listing Gross Room Revenue, other revenues generated at the Hotel, room occupancy rates, reservation data, the amounts currently due under Paragraph 3D and other information we deem useful in connection with the Hotel System (the "Data"). The statement shall be in such form and detail as we may reasonably request, shall be our property and may be used by us for all reasonable purposes. We will not knowingly provide Data on your Hotel as an inducement to develop other hotel brands in your market area, although you understand that some of the Data may be compiled into information we provide to prospective licensees in an aggregate manner.

B.     Preparation and Maintenance of Records.  You agree to: (i) prepare on a current basis in a form satisfactory to us, (and preserve for at least four (4) years), complete and accurate records concerning Gross Room Revenue and all financial, operating, marketing and other aspects of the Hotel; and (ii) maintain an accounting system which fully and accurately reflects all financial aspects of the Hotel, including, but not limited to, books of account, tax returns, governmental reports, register tapes, daily reports, profit and loss and cash flow statements, balance sheets and complete quarterly and annual financial statements.

C.     Audit.  We or our agents may, at any time, examine and copy all books, records, and tax returns related to your Hotel and, at our option, require an independent audit. If an inspection or audit reveals that you have understated payments in any report to us, you shall immediately pay us the amount

understated, in addition to interest from the date such amount was due until paid, at the lesser of one and one-half percent (1.5%) per month or the maximum rate permitted by law. In this event, we may also require that all of your future annual financial statements be audited at your expense by an independent certified public accounting firm you select and we approve. If an inspection or audit discloses an underpayment to us of five percent (5%) or more of the total amount owed during any six (6) month period, you shall, in addition to paying the understated amount with interest, reimburse us for our costs and expenses in connection with the inspection or audit, including legal and accounting fees. These remedies supplement any others we may have under this Agreement.

D.    Annual Financial Statements. Upon our request, not later than ninety (90) days after the end of your fiscal year, you must provide us with complete financial statements for such year certified by your chief financial or principal accounting officer to be true and correct and prepared in accordance with generally accepted accounting principles consistently applied. Any false certification shall be a material breach of this Agreement. Upon our request from time to time you also agree to provide us with operating statistics for the Hotel.

7.    Indemnity and Insurance.

A.    Indemnity. You agree that nothing in this Agreement authorizes either party to make any contract, agreement, warranty or representation on the other's behalf, or to incur any debt or other obligation in the other's name, and that neither party shall assume liability for, or be deemed liable as a result of any such action, or by reason of any act or omission of the other party or any claim or judgment arising therefrom.

(1)    You agree to indemnify, defend and hold harmless us, our parent, affiliates, subsidiaries and our respective officers, directors, agents, employees, successors and assigns (the "Indemnified Parties") against, and to reimburse the Indemnified Parties for, any and all claims or actions arising or alleging to arise directly or indirectly from, as a result of, or in connection with, your operation of the Hotel, including, but not limited to, claims alleging either intentional or negligent conduct, acts or omissions by you or us relating to the operation of the Hotel or the Hotel System, as well as the costs, including attorneys' fees, of defending against said claims or actions. We reserve the right to defend any such claim or action against us. You agree that this indemnity will survive the expiration or termination of this Agreement. You have no obligation to indemnify us if a court of competent jurisdiction makes a final decision not subject to further appeal that we or our employees directly engaged in willful misconduct or intentionally caused the property damage or bodily injury that is the subject of the claim. You shall notify us immediately (but not later than five (5) days following your receipt of notice) of any claim, action or potential claim or action naming any Indemnified Party as a defendant or potential defendant (the "Indemnification Notice"). The Indemnification Notice shall include copies of all correspondence or court papers relating to the claim or action.

(2)    We shall indemnify you and hold harmless your parent, affiliates, subsidiaries and respective officers, directors, agents, and employees against all claims against you arising as a result of, or in connection with, a material breach by us which is adjudicated by a court of competent jurisdiction to be the sole cause of the claim, as well as the cost of defending the claim.

(3)    If you fail to comply with this Paragraph 7A, we may retain attorneys and defend any claim, action or alleged claim or action at your sole expense. You agree that our obligations hereunder are exclusively to you, and no other party may rely on, enforce, or obtain relief for breach of such obligations.

B.    Insurance. During the License Term, you shall comply with the insurance requirements of any applicable law, lease or mortgage covering the Hotel and our specifications regarding amounts and types of insurance. Prior to the Opening Date, and thereafter on an annual basis and/or each time you change the terms of your insurance policy or carrier, you shall provide us with certificates of insurance which: (i) evidence your liability insurance, its amounts and the amount of your deductible; (ii) name Microtel Inns and Suites Franchising, Inc. and U.S. Franchise Systems, Inc. as additional insureds; (iii) state that your policy may not be canceled, amended or permitted to lapse or expire without thirty (30) days prior written notice to us. All insurance policies shall be written on a fully insured basis. Deductibles and self insurance retentions are subject to our prior approval. At the minimum, you agree to maintain or cause to be maintained (as applicable) the following insurance underwritten by an insurer we approve:

(1)    employer's liability and workers' compensation insurance as prescribed by applicable law; and

(2)    comprehensive general and automobile liability insurance (with products, completed operations and independent contractors coverage), all on an occurrence basis, with single-limit coverage for personal and bodily injury and property damage of at least $5,000,000.00 per occurrence which can be met by a combination of primary liability and umbrella liability policies. You also agree to cause your general contractor to maintain comprehensive general liability insurance of at least $5,000,000.00 per occurrence naming Microtel Inns and Suites Franchising, Inc. and U.S. Franchise Systems, Inc. as additional insureds.

8.    Transfer.

A.    Transfer by Us.    We have the right to transfer or assign our rights or obligations under this Agreement to any person or entity and our interests will inure to the benefit of any transferee, successor or assignee.

B.    Transfer by You.    You agree that the rights and duties created by this Agreement are personal to you and that we have granted this License in reliance on the business skill, financial capacity and character of you and your partners, shareholders or members. You may mortgage the Hotel to any financial institution without our consent if you remain the mortgagor of the Hotel. Except as provided in Paragraph 8B(1), neither you, any successor to your interest, or any individual, partnership, corporation, or other legal entity which directly or indirectly owns any interest in this License or in you shall sell, assign, transfer, convey or otherwise encumber any direct or indirect interest in this License, the Hotel or the assets of the Hotel without our consent.

(1)    A transfer of less than a fifty percent (50%) equity interest in you which does not transfer Control (as defined below), does not require our consent if you notify us in writing within thirty (30) days of the transfer.

(2)    A transfer which alone or combined with previous or simultaneous transfers changes Control of the License, you, the Hotel, or greater than fifty percent (50%) of the Hotel's assets requires our prior written consent. We may require any or all of the following as conditions of our consent to a transfer:

10



(a)  your compliance with all terms of this Agreement;

(b)                        the transferee entity or individual, and all shareholders, partners or members of the transferee (collectively, the "Transferee"), shall meet our then-current qualifications for new licensees;

(c)                        the Transferee shall execute our then-standard form of license agreement and other applicable agreements for new Hotel System licensees (which will include then-current fees and Contributions), provided, however, Transferee's fees (including but not limited to 3D(1)(a) and 3D(1)(b) shall not be less than the fees you are currently obligated to pay under the Agreement;

(d)  any new general manager retained by the Transferee completes our initial training program;

(e)  the Hotel shall be upgraded within the time period we set to conform to the then-current standards and specifications for hotels operating under the Hotel System;

(f)  you or the Transferee must pay us a $5,000.00 transfer fee unless the transfer is to the spouse, issue, parent, or sibling of your partner(s) or shareholder(s), or from one partner or shareholder to another.  If the Transferee requests approval of a term exceeding the remainder of the License Term, the Transferee must pay our then-current application fee, prorated for the time period exceeding the License Term;

(g)  you execute a general release, in a form satisfactory to us, of any and all claims by you against us and our officers, directors, shareholders, and employees;

(h)  the Transferee executes a written assignment, in a form satisfactory to us, assuming and agreeing to discharge all of your obligations under this Agreement; and

(i)  you execute all documents we request evidencing your agreement to remain liable for all obligations to us and our parent, subsidiaries and affiliates prior to the transfer.

(j)  "Control" or "Controlling" shall mean the direct or indirect possession of the power to direct or cause the direction of the management and policies of any person or legal entity.

(k)  Except as otherwise provided herein, any purported assignment or transfer without our prior written consent is null and void, constitutes a material breach of this Agreement, enables us to terminate this Agreement without providing you an opportunity to cure and allows us to seek both injunctive relief and monetary damages.

(l)  If you are an individual, you may transfer this License without paying a transfer or application fee if: (i) you retain at least twenty-five percent (25%) ownership; (ii) we receive your request and supporting documentation before the Opening Date; and (iii) the Transferee meets our then-current standards for new licensees.

C.    Transfers of the License or Equity Interest in You Upon Death.  Upon the death or mental incompetency of you or a person Controlling you, the executor, administrator, or personal representative ("Representative") of such person shall transfer within three (3) months his interest to a third party

11



subject to our approval and the conditions set forth in Paragraph 8B. In the case of transfer by devise or inheritance, if the heirs or beneficiaries can not meet the conditions of Paragraph 8B, the Representative shall have six (6) months from the death or mental incompetency to dispose of the interest, subject to the transfer provisions of this Agreement, after which time we may terminate this Agreement.

D.    Registration of a Proposed Transfer of Equity Interests. Securities in you may be offered to the public only with our prior written consent. All materials required by federal or state law for the sale of any interest in you shall be submitted to us for review prior to distribution or filing with any government agency, including any materials to be used in any offering exempt from registration under federal or state securities laws. No offering by you shall imply or state (by use of the Proprietary Marks or otherwise) that we are participating as an underwriter, issuer or your representative. You agree to pay us a non-refundable fee equal to the greater of $5,000.00 or our costs and expenses of reviewing each proposed offering including, without limitation, attorneys' fees. You acknowledge that we may require changes to your offering materials and a full indemnification from all participants in the offering before issuing our consent.

E.    Non-Waiver of Claims. Our consent to a transfer is not a waiver of: (i) any claims we may have against you; or (ii) our right to demand strict compliance by the Transferee with the terms of this Agreement.

F.    Our Right of First Refusal. If any party holding any direct or indirect interest in you or in all or substantially all of the Hotel's assets desires to accept a *bona fide* offer from a third party to purchase the interest, you agree to notify us and provide whatever documentation relating to the offer we require. If the third party purchaser wishes to remove the Hotel from the Hotel System, we have the right and option, exercisable within thirty (30) days after we receive written notification, to inform you that we intend to purchase the seller's interest on the same terms and conditions offered by the third party. If we elect to purchase the seller's interest, closing will occur within ninety (90) days from the date of our notice to the seller. If we elect not to purchase the seller's interest, any material change thereafter to the terms of the offer shall constitute a new offer subject to our same rights of first refusal as in the case of the third party purchaser's initial offer. Our failure to exercise this option is not a waiver by us of any other provision of this Agreement. If the consideration, terms, and/or conditions offered by the third party purchaser are such that we may not reasonably be required to furnish the same consideration, terms, and/or conditions, then we may purchase the interest for the reasonable cash equivalent. If the parties cannot agree within thirty (30) days on the reasonable cash equivalent of the consideration, terms, and/or conditions offered by the third party purchaser, an independent appraiser whose determination shall be binding will be designated by us at our expense to determine the reasonable equivalent cash consideration.

G.    No Right of First Refusal. If a third party meeting our then-current qualifications offers to purchase the Hotel and wishes to keep the Hotel in the Hotel System, we shall have no right of first refusal.

9.    *Condemnation and Casualty.*

A.    Condemnation. You shall immediately notify us of any proposed taking of the Hotel by eminent domain. If a taking occurs, we shall use reasonable efforts (but shall not be obligated) to



transfer this Agreement to a location selected by you and approved by us within four (4) months of the taking. If we approve the new location and you subsequently open a new hotel at the new location within two (2) years of the taking, the new hotel shall be deemed to be the Hotel licensed hereunder. If a taking occurs and the new hotel does not become the Hotel licensed hereunder (or if it is evident to us that such shall be the case), this Agreement will terminate, but you will not pay us any liquidated damages.

     B.    Casualty. If the Hotel is damaged by fire or casualty, you shall repair the damage in accordance with our standards. If the damage or repair requires closing all or any portion of the Hotel, you shall: (i) notify us immediately; (ii) commence reconstruction within four (4) months of closing; and (iii) reopen for continuous business operations as soon as practicable (but in any event within twenty-four (24) months after closing of the Hotel and not without providing us at least ten (10) days advance notice of the proposed reopening date). If the Hotel is not reopened in accordance with this Paragraph 9B, this Agreement will terminate and you shall pay us liquidated damages (see Paragraph 10D), provided, however, that your payment of liquidated damages shall not exceed the amount of any insurance proceeds you receive.

     C.    Extensions of Term. The License Term will be extended for the period the Hotel is not operating as a result of fire or other casualty. You are not required to make any payments pursuant to Paragraph 3D while the Hotel is closed by reason of condemnation or casualty unless you receive insurance proceeds.

10.    *Termination.*

     A.    Expiration of Term. This Agreement will expire without notice effective twenty (20) years from the authorized Opening Date, subject to its earlier termination as set forth herein. You acknowledge the difficulty of determining our damages if this Agreement terminates prior to its expiration. You also acknowledge that the liquidated damages set forth in Paragraph 10D represent the best estimate of our damages arising from any termination of this Agreement prior to its expiration. Subject to Paragraph 11A, upon the expiration of the License Term, you shall comply with our de-identification procedures as set forth in Paragraph 10C of this Agreement or in the Manual.

     B.    Defaults.
       (1)    Default with Opportunity to Cure.
          (a) If you fail to comply with or violate any provision of this Agreement, the Manual or any Hotel System standard, unless this Agreement, applicable law or any default notice we send to you provides otherwise, you shall have thirty (30) days from your receipt of a written default notice to remedy such default (the "Cure Period"). If any default remains uncured after the Cure Period expires, this Agreement shall terminate automatically without further notice to you, effective immediately upon the expiration of the Cure Period. Alternatively, instead of considering this Agreement automatically terminated upon the expiration of the Cure Period, we may suspend your access to the CRS or remove your Hotel from our advertising publications or the National Directory until your default is cured to our satisfaction.
          (b) If we issue you two (2) written default notices within any twelve (12) month period, the Cure Period in the second written default notice shall be ten (10) days, unless applicable law provides otherwise.

13

(c) In any judicial or other proceeding in which the validity of our termination of this Agreement is contested, we may cite and rely upon all of your defaults or violations of this Agreement, not solely the defaults or violations referenced in any written default notice sent to you.

(d) Any notice of termination or suspension of services we issue to you shall not relieve you of your obligations that survive termination of this Agreement, including, but not limited to, its de-identification, indemnification and liquidated damages provisions.

(e) If you fail to provide us with a copy of the recorded deed, an executed lease for at least the License Term or other evidence satisfactory to us of your Control of the Hotel on or before commencement of construction or renovation, we may issue you a default notice which may lead to us terminating this Agreement.

(f) If you default on any of the terms of the Software License Agreement.

(2) Default Without Opportunity to Cure (Immediate Termination by Us). This Agreement shall terminate immediately without notice to you if:

(a) you, or any guarantor of your obligations (a "Guarantor"), shall: (i) not pay its debts as they become due; (ii) admit its inability to pay its debts; or (iii) make a general assignment for the benefit of creditors;

(b) you, or any Guarantor, commence or consent to any case, proceeding or action seeking: (i) reorganization, arrangement, adjustment, liquidation, dissolution or composition of you or your debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors; or (ii) appointment of a receiver, trustee, custodian or other official for any portion of its property;

(c) you, or any Guarantor, take any corporate or other action to authorize any of the actions set forth above in Paragraphs 10B(2)(a) or 10B(2)(b);

(d) any case, proceeding, or other action against you or any Guarantor is commenced seeking an order for relief against it as debtor, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other official for it or for any portion of its property, and such case, proceeding or other action: (i) results in an order for relief against it which is not fully stayed within seven (7) business days after the entry thereof; or (ii) remains undismissed for forty-five (45) days;

(e) an attachment remains on all or any part of the Hotel or your or any Guarantor's assets for thirty (30) days;

(f) you or any Guarantor fail, within sixty (60) days of the entry of a final judgment against you or any Guarantor in any amount exceeding $50,000.00, to discharge, vacate or reverse the judgment, or to stay execution of it, or if appealed, to discharge the judgment within thirty (30) days after a final adverse decision in the appeal;

(g) you cease to operate the Hotel at the location designated on Attachment A or under the Proprietary Marks, or lose possession or the right to possession of all or a significant part of the Hotel, except as otherwise provided herein;

(h) you contest in any court or proceeding either all or any portion of our ownership of the Hotel System or the validity of any of the Proprietary Marks;

14



(i) you transfer your rights under this Agreement in violation of Paragraph 8;

(j) you fail to identify the Hotel to the public as a Microtel Hotel;

(k) any action is taken to dissolve or liquidate you or any Guarantor, except due to death;

(l) you or any of your principals or Guarantors is, or is discovered to have been, convicted of a felony or any other offense likely to reflect adversely upon us, the Hotel System, or the Proprietary Marks, including, but not limited to, any violation of laws or regulations relating to discrimination, equal employment or equal opportunity;

(m) you knowingly maintain false books and records of account or knowingly submit false or misleading reports or information to us, including any information you provide or fail to provide to us on your franchise application or otherwise;

(n) you disclose the contents of any Confidential Materials to any unauthorized person or fail to exercise reasonable care to prevent such disclosure; or

(o) in our discretion, we determine a threat or danger to public health or safety results from the construction, maintenance or operation of the Hotel, such that an immediate shutdown of the Hotel is necessary to avoid a substantial liability or loss of goodwill to the Hotel System. Notwithstanding the foregoing, if we determine, in our discretion, that both the threat of danger to public health or safety is eliminated and the reopening of the Hotel will not cause a substantial loss of goodwill to the Hotel System within six (6) months of the termination of this Agreement, we will reinstate the Agreement on identical terms and conditions.

C.  De-identification of Hotel Upon Termination or Expiration of this Agreement.

(1)  Within ten (10) days of the effective date of termination or expiration of this Agreement, as the case may be, you agree to de-identify the Hotel by taking whatever action we deem necessary to ensure that the Hotel is no longer identified as a hotel within the Hotel System and no use is made of any part of the Hotel System at or in connection with the Hotel or otherwise. Among the actions you must take to de-identify the Hotel, you agree to: (i) return the Manual and all other proprietary materials to us; (ii) remove all items identifying the Hotel System; (iii) change the telephone listing for the Hotel; (iv) remove all items bearing the Proprietary Marks (including all signage) from the Hotel; (v) cancel all fictitious or assumed name or equivalent registrations relating to your use of the Proprietary Marks; (vi) immediately stop answering the telephone in any way that would lead a prospective customer to believe that the Hotel is affiliated with the Hotel System; and (vii) permit our representative to enter the Hotel to conduct inspections on a periodic basis until de-identification is completed to our satisfaction. Until de-identification is completed to our satisfaction, you agree to maintain a conspicuous sign at the registration desk in a form we specify stating that the Hotel is no longer associated with the Hotel System. You acknowledge that the de-identification process intends to immediately alert the public that the Hotel is not affiliated with the Hotel System.

(2)  If you fail to comply with all of the de-identification provisions of Paragraph 10C(1) within the permitted ten (10) day period, you agree to: (i) pay a royalty fee of



$5,000.00 per day until de-identification is completed to our satisfaction; and (ii) permit our representative to enter the Hotel to complete the de-identification process at your expense.

    (3)    You agree to pay all our costs and expenses of enforcing these de-identification provisions, including, but not limited to, all attorneys' fees. Nothing contained herein limits our rights or remedies at law or in equity should you not complete the de-identification procedures within the permitted ten (10) day period, including, but not limited to, our right to seek and obtain an injunction to remove or cause to be removed, at your sole cost and expense, all signage from the Hotel.

    D.    <u>Payment of Liquidated Damages</u>. If this Agreement terminates after the first twenty-four (24) months of Hotel operations and prior to its expiration for any reason other than as set forth in Paragraphs 9A or 9B, you agree to pay us liquidated damages as set forth below. Your payment of liquidated damages to us shall not be considered a penalty for your breaching this Agreement, but rather a reasonable estimate of our damages and lost future fees we would have received from you under the Agreement. You acknowledge that your obligation to pay us liquidated damages is in addition to, not in lieu of, your obligations to pay any amounts then due to us and comply with the de-identification provisions of Paragraph 10C. You agree to pay us liquidated damages in a lump sum within thirty (30) days following the date of termination, based on the average occupancy rate at the Hotel for the twelve (12) months preceding the termination ("Occupancy Rate") as follows:

    (1)    if the Occupancy Rate was below fifty percent (50%), you shall pay no liquidated damages;

    (2)    if the Occupancy Rate was fifty percent (50%) to fifty-nine and nine-tenths percent (59.9%), you agree to pay us an amount equal to twelve (12) months of all fees under Paragraph 3D(1)(a), unless you give us twelve (12) months prior written notice and your Occupancy Rate meets the criteria of this Paragraph 10D(2), in which case you shall pay no liquidated damages;

    (3)    if the Occupancy Rate was sixty percent (60%) to sixty-nine and nine-tenths percent (69.9%), you agree to pay an amount equal to twenty-four (24) months of fees under Paragraph 3D(1)(a); and

    (4)    if the Occupancy Rate was seventy percent (70%) or greater, you agree to pay an amount equal to thirty-six (36) months of fees under Paragraph 3D(1)(a).

If this Agreement terminates at any time from the commencement of construction of the Hotel (as defined in Attachment "C") up to and until the end of the first twenty-four (24) months of the operation of the Hotel, you agree to pay us liquidated damages equal to the greater of: (i) $2,000.00 multiplied by the number of Guest Rooms; or (ii) thirty-six (36) multiplied by the average monthly fees required under Paragraph 3D(1)(a).

*11.    Renewal.*

    A.    <u>Requirements</u>. Upon your written submission of our then-current form of renewal application at least 180 days prior to this Agreement's expiration date, we shall grant you a ten (10) year renewal term if, in our discretion, the following criteria are satisfied:

    (1)    you pay a non-refundable fee equal to one-half of the then-current franchise application fee;

    (2)    you received passing Quality Assurance Scores (as defined in the Manual) during the preceding three (3) year period;

(3) you agree to upgrade the Hotel to meet our then-current criteria for the Hotel System; and

(4) you have a favorable operating and payment history.

Notwithstanding the foregoing, if an independent third party chosen by us determines that the location of the Hotel is inappropriate or obsolete for the brand we shall not be required to renew your license. We will accept or reject your written renewal application within thirty (30) days of its receipt by us. You agree to execute our then-current form of license agreement to effectuate any renewal.

B.   Alternative Process. If we determine that you do not meet the above criteria, you may apply to renew this Agreement for a ten year term by submitting an application at least 120 days prior to the expiration of the License Term with a non-refundable renewal fee equal to our then-current franchise application fee. We will evaluate your application based on your operating history, the location of the Hotel and your agreement to upgrade the Hotel. If we accept your application, you will execute our then-current form of license agreement.

12.   Relationship of Parties.

A.   No Agency Relationship. You are an independent contractor. Neither party is the legal representative or agent of, or has the power to obligate the other for any purpose. The parties have a business relationship defined entirely by the express provisions of this Agreement. No partnership, joint venture, affiliate, agency, fiduciary or employment relationship is intended or created hereby.

B.   Your Notices to Public Concerning Independent Status. You shall take such steps as we require to minimize the chance of a claim being made against us for any occurrence at the Hotel, or for acts, omissions or obligations of you or anyone affiliated with you or the Hotel. Such steps may include giving notice in private or public rooms or on advertisements, business forms and stationery, making clear to the public that we are not the owner or operator of the Hotel and are not accountable for events occurring at the Hotel.

C.   Use of the Microtel Name. You shall not use the word "Microtel" or any similar words in your entity or trade name, nor authorize or permit such use by anyone else. You shall not use the word "Microtel" or any other name or mark associated with the Hotel System to incur any obligation or indebtedness.

13.   Miscellaneous.

A.   Severability and Interpretation. The remedies provided in this Agreement are not exclusive. If any provision of this Agreement is held unenforceable, void or voidable, all remaining provisions shall continue in full force and effect unless deletion of the provision(s) materially frustrates the purpose of the parties or makes performance commercially impracticable. If any provision requires interpretation, such interpretation shall be based on the reasonable intention of the parties without interpreting any provision in favor of or against any party hereto by reason of the drafting of the party or its position relative to the other party.

B.    Binding Effect.  This Agreement is valid when executed and accepted by us at our office in Atlanta, Georgia.  It is made and entered into in the State of Georgia and shall be governed and construed under and in accordance with the laws of the State of Georgia, without regard to its conflicts of laws or provisions.  You acknowledge that you have sought, voluntarily accepted, and become associated with us at our headquarters in Atlanta, Georgia.  The choice of law designation permits but does not require that all lawsuits or proceedings concerning this Agreement to be filed in the State of Georgia.

C.    Exclusive Benefit.  This Agreement is exclusively for the benefit of the parties hereto and shall not create liability to any third party, unless otherwise set forth herein.  No agreement between us and any third party is for your benefit.

D.    Entire Agreement.  This is the entire Agreement between the parties relating to the Hotel.  Neither we nor any person on our behalf has made any representation to you concerning this Agreement, the Hotel or the Hotel System that is not set forth herein or in our UFOC.  No change in this Agreement shall be valid unless in writing signed by both parties.  No failure to require strict performance or to exercise any right or remedy hereunder shall preclude requiring strict performance or exercising any right or remedy in the future.

E.    Our Withholding of Consent.  Our consent, wherever required, may be withheld if any default by you exists under this Agreement.  Prior to any deviation by you from any material term of this Agreement, you must obtain our prior written consent.

F.    Notices.  All notices given under this Agreement shall be in writing, delivered by any means which provides written evidence of the date received.  Notices shall be deemed given on the date such notice is properly sent to the respective parties at the following addresses unless and until a different address is designated by written notice to the other party:

To us:    Microtel Inns and Suites          To you:    Dinesh Patel
              Franchising, Inc.                                    1973 Lee Highway
              13 Corporate Square, Suite 250                 Bristol, VA 24201
              Atlanta, Georgia 30329
              Attention: Doug Shaw
                      Vice President
                      Franchise Administration
    We reserve the right to notify both your lender and any or all members, partners or shareholders of you in the event we issue any notice under this Agreement.

G.    Descriptive Headings.  The headings in this Agreement are for convenience only and shall not control or affect the meaning or construction of any provision.

H.    Management of the Hotel.  You must at all times retain and exercise direct management control over the business of the Hotel.  You shall not enter into any lease, management agreement or other similar arrangement for the operation of the Hotel or any part thereof with any independent entity without our prior written consent.

I.    Conversion of Other Properties.  We agree not to accept conversions of existing hotels into the Hotel System.  If we violate this provision, you may terminate this Agreement upon notice to us

18

 

without paying us liquidated damages. However, you shall remain responsible for paying us all Royalty Fees and Contributions owed to us prior to the termination of this Agreement. You also agree to comply with the de-identification procedures set forth in Paragraph 10C. If you fail to comply with the de-identification procedures in a timely fashion, you agree to pay us liquidated damages as described in Paragraph 10D. Alternatively, you may remain in the Hotel System for the License Term without paying us future Royalty Fees; provided, however, you shall continue to pay us Contributions as required under Paragraph 3D(1)(b).

J.    Guest Room Rates.  You shall establish room rates for the Hotel which must be submitted to us before the deadline for the next National Directory.  With the exception of special event periods, you agree not to charge any rate exceeding the rate published in the current edition of the National Directory.

14.    Special Stipulations

A.    **Financial Incentive Upon Commencement of Construction.** **Notwithstanding anything contained herein to the contrary, if you are in full compliance with the terms of this Agreement and all other agreements executed with Microtel and/or its affiliates, upon proof that the Hotel has commenced construction (as defined in Attachment C) on or before the standard development date set forth in Attachment C, we shall issue you a check in the amount of $20,00.00. This payment is to help defray the cost of meeting our plans, specifications and brand standards (architectural, engineering, etc.), including but not limited to, customizing the building for the site, our furniture, fixture and equipment requirements and other similar costs and expenses.**

[SIGNATURES TO FOLLOW ON NEXT PAGE]

19

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first stated above.

LICENSEE:
DINESH PATEL

By: _____
      Dinesh Patel
      Individual

Witness: _____ Shiba Patel

LICENSOR:
MICROTEL INNS AND SUITES FRANCHISING, INC.

By: _____
      Doug Shaw
      Vice President
      Franchise Administration

Attest: _____
      Assistant Secretary

20

# GUARANTY

As an inducement to Microtel Inns and Suites Franchising, Inc. ("we," "our" or "us") to execute that certain license agreement (including any future amendments thereto) with DINESH PATEL ("Licensee") dated as of _April 5, 2000_, a copy of which is attached hereto, (collectively, the "License Agreement"), the undersigned (individually, a "Guarantor" and collectively, the "Guarantors"), jointly and severally, hereby unconditionally warrant to us and our parent, successors and assigns that all representations of Licensee contained in both the License Agreement and the application submitted in connection therewith are true and correct. The Guarantors also jointly and severally guarantee the timely payment and performance of all of Licensee's obligations under the License Agreement.

Upon notice from us that Licensee is in default under any of the terms of the License Agreement, the Guarantors shall cure any monetary default within five (5) business days from such notice and immediately perform all other obligations of Licensee under the License Agreement. Without affecting the obligations of the Guarantors under this Guaranty, we may without notice to the undersigned extend, modify or release any indebtedness or obligation of the Licensee, or settle, adjust or compromise any claims against the Licensee. The Guarantors waive notice of amendment of the License Agreement and notice of demand for payment or performance by the Licensee. The Guarantors expressly acknowledge that their joint and several obligation to cure all defaults and guaranty the performance of Licensee shall survive the termination of the License Agreement.

Upon the death of a Guarantor, the estate of such Guarantor shall be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death. The obligations of the surviving Guarantors shall continue in full force and effect.

This Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the Guarantors specifically waives any obligation we may have to proceed against the Licensee on any money or property held by the Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The Guarantors further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment or any of the guaranteed obligations is rescinded or must otherwise be restored or returned by us upon the insolvency, bankruptcy or reorganization of the Licensee or any Guarantor, all as though such payment has not been made.

Our failure to enforce all or any portion of our rights under this Guaranty shall not constitute a waiver of our ability to do so at any point in the future.

IN WITNESS WHEREOF, each of the undersigned has signed this Guaranty as of the date of the License Agreement.

Witnesses:                                              Guarantors:

**[no signatures necessary]**

21

## ATTACHMENT A
### THE HOTEL

*Facilities (Paragraph 1):*

Site --- Area and general description:     A Microtel Inn & Suites hotel located at: Old Airport Road and I-81, Bristol, VA

Number of approved Guest Rooms:     65

Number of approved Guest Suites:     minimum of 10%

*Ownership of Licensee (Paragraph 8):*
DINESH PATEL, individual          100%



## ATTACHMENT B
### TERRITORY
**Bristol (Old Airport Road)/#2654**

The Territory shall be defined by the following corridors:

- starting at the site and traveling 5 miles southwest along I-81 up to and including the intersection of I-81 and Highway 11E/Exit 3; and
- starting at the site and traveling 4 miles northeast along I-81 up to the intersection of I-81 and Hilander Park/Exit 10.

Territory shall also include ½ mile on either side of the corridors defined in the previous sentences.

## ATTACHMENT C
## THE WORK

You acknowledge that every detail of the Hotel System is important to us and other licensees operating under the Hotel System to develop and maintain the standards and public image of the Hotel System. You agree to strictly comply with the details of the Hotel System, as set forth in the Manual or otherwise in writing. The following constitutes the development schedule for the Hotel.

1)   You shall submit preliminary plans (the "Plans"), including site layout and outline specifications within three (3) months from the date of this Agreement.

2)   You shall attend at your own expense a briefing to acquaint you with our building process and support structure at our headquarters in Atlanta, Georgia within four (4) months from the date of this Agreement.

3)   You shall submit to us complete working drawings and specifications for the Hotel, including its proposed equipment, furnishings, facilities and signs, with such detail and containing such information as we require within five (5) months from the date of this Agreement. The Plans shall conform to our then-prevailing Hotel System standards. **Construction shall not begin until we have approved the Plans in writing. Following our approval of your Plans, you shall make no changes to the Plans without our prior written consent.** If during the course of construction changes in the Plans are required, you shall notify us immediately. **Your failure to construct the Hotel in strict accordance with the Plans we approve in writing shall constitute a material breach and may lead to our issuing a default notice and subsequently terminating this Agreement. Our approval of the Plans is intended exclusively to ensure compliance with our then-current standards.**

4)   Construction shall commence within *seven (7) months* from the date of this Agreement. You shall notify us within (5) days of commencement of construction, which shall mean commencement of any site work. Construction shall continue uninterrupted (unless interrupted by *force majeure*) until completion of the Hotel. The term "*force majeure*" shall mean an act of God, war, civil disturbance, government action, fire, flood, accident, hurricane, earthquake or other calamity, strike or other labor dispute.

5)   The Hotel shall be ready to open for business within twelve (12) months from the date hereof ("Completion Date"). Within ten (10) days of the Completion Date you shall ask us to conduct a final inspection, which we shall promptly conduct. You shall not open for business prior to our written authorization to do so, and you agree to open within ten (10) days of our authorization. We will not authorize you to open the Hotel unless and until you are in full compliance with all terms of this Agreement.

# EXHIBIT B

## ADDENDUM TO LICENSE AGREEMENT

This "Addendum" is made and entered into as of this 4th day of February, 2002, by and between Microtel Inns and Suites Franchising, Inc., a Georgia corporation ("Microtel"), Dinesh S. Patel, an individual ("Licensee"), and V.A.L. ENTERPRISES, INC, a Virginia Corporation ("New Licensee"). This Addendum supplements that certain License Agreement dated April 5, 2000 (the "Agreement"), between Microtel and Licensee, relating to a license to operate a Microtel Inn & Suites located at 131 Bristol East Road, Bristol, VA 24201 / #2654 (the "Hotel") and that certain SOFTWARE LICENSE AGREEMENT dated as of April 5, 2000, (the "Software Agreement"), between U.S. FRANCHISE SYSTEMS, INC., a Delaware corporation ("Software Licensor"), and Dinesh S. Patel, an individual ("Licensee"). To the extent there is any conflict between the Agreement, the Software Agreement, and this Addendum, this Addendum shall govern and control.

1.     The Licensee name on the cover page and Attachment A of the Agreement is deleted in its entirety and replaced with the following:

      "V.A.L. Enterprises, Inc."

2.     The Licensee name and type noted in the first Paragraph of the Agreement are deleted in their entirety and replaced with the following:

      "V.A.L. Enterprises, Inc., a Virginia Corporation."

3.     The "Ownership of Licensee" section of Attachment A of the Agreement is deleted in its entirety and replaced with the following:

      Ownership of Licensee: V.A.L. Enterprises, Inc.        100%

      All future changes in the ownership structure will be calculated based upon the following:
         **Dinesh S. Patel, Shareholder**        **5%**
         **Jayesh D. Patel and Chhaya Patel**       **95%**

5.     The Licensee name and type noted in the first Paragraph of the Software License Agreement are deleted in their entirety and replaced with the following:

      " V.A.L. Enterprises, Inc., a Virginia Corporation."

6.     Except as expressly stated in this Addendum, no further additions, modifications or deletions to the License Agreement or Software License Agreement are intended by the parties or made by this Addendum. All other terms and conditions of the Agreement remain in full force and effect.

[Signatures on following page]

Bristol, VA: #2654 ~ Microtel Inn & Suites
Addendum to License Agreement
Page 2 of 2

IN WITNESS WHEREOF, the parties have executed this Addendum as of the day and year first above written:

LICENSEE:
DINESH S. PATEL

By: _____          Witness: _____
Dinesh S. Patel
Individual

LICENSOR:
MICROTEL INNS AND SUITES FRANCHISING, INC.

By: _____          Attest: _____
Tim Goodman
Vice President
Franchise Administration

SOFTWARE LICENSOR:
U.S. FRANCHISE SYSTEMS, INC.

By: _____          Attest: _____
Tim Goodman
Vice President
Franchise Administration

NEW LICENSEE:
V.A.L. Enterprises, Inc.

By: _____          Witness/Attest: _____
Jayesh D. Patel                                  Another Corporate Officer or
President                                        Notary Public w/seal

# GUARANTY

As an inducement to Microtel Inns and Suites Franchising, Inc. ("we," "our" or "us") to execute that certain license agreement (including any future amendments thereto) with V.A.L. Enterprises, Inc. ("Licensee") dated as of April 5, 2000, (collectively, the "License Agreement"), each of the undersigned for themselves, their heirs, successors, and assigns, do jointly and severally, hereby absolutely and unconditionally warrant to us and our parent, successors and assigns that all representations of Licensee contained in both the License Agreement and the application submitted in connection therewith are true and correct. The undersigned also jointly and severally agree to be personally bound by each and every covenant, term, condition, agreement and undertaking (including, without limitation, the timely payment and performance of all of Licensee's obligations under the License Agreement), contained and set forth in the License Agreement, and the full and prompt payment of any amounts, costs, expenses, claims, charges or liabilities incurred by us under the License Agreement or this Guaranty, including attorneys' fees and costs, related to the making, performance, or enforcement of the License Agreement or this Guaranty, and agree that this Guaranty shall be construed as though the undersigned and each of them executed agreement(s) containing the identical terms and conditions of the License Agreement.

If more than one person has executed this Guaranty, the term "the undersigned" as used herein, shall refer to each such person, and the liability of each of the undersigned hereunder shall be joint and several and primary as sureties.

The undersigned hereby agree that without the consent of or notice to any of the undersigned and without affecting any of the obligations of the undersigned hereunder: (a) any term, covenant or condition of the License Agreement may be amended, compromised, released or otherwise altered by us and the Licensee, and the undersigned do guarantee and promise to perform all the obligations of the Licensee under the License Agreement as so amended, compromised, released or altered; (b) any guarantor of or party to the License Agreement may be released, substituted or added; (c) any right or remedy under the License Agreement, this Guaranty or any other instrument or agreement between us and the Licensee may be exercised, not exercised, impaired, modified, limited, destroyed or suspended; and (d) we or any other person may deal in any manner with the Licensee, any of the undersigned, any party to the License Agreement or any other person.

Should Licensee be in breach or default under the License Agreement, we may proceed directly against any or each of the undersigned without first proceeding against or notifying the Licensee and without proceeding against any others of the undersigned. Upon notice from us that Licensee has failed to pay monies due and owing to us under the License Agreement, any and each of the undersigned agree to cure any monetary default within five (5) business days from such notice.

Notice to and demand upon Licensee or any of the undersigned shall be deemed notice to or demand upon Licensee and all of the undersigned, and no notice or demand need be made to or upon any or all of the undersigned. The cessation of or release from liability of Licensee or any of the undersigned shall not relieve any other of the undersigned from liability hereunder or under the License Agreement, except to the extent that the breach or default has been remedied or monies owed have been paid.

Upon the death of an undersigned, the estate of such undersigned shall be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death. The obligations of the surviving undersigned shall continue in full force and effect.

This Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the undersigned specifically waives any obligation we may have to proceed against the Licensee on any money or property held by the Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment or any of the guaranteed obligations is rescinded or must otherwise be restored or returned by us upon the insolvency, bankruptcy or reorganization of the Licensee or any of the undersigned, all as though such payment has not been made.

The undersigned expressly acknowledge that the obligations hereunder survive the termination of the License Agreement.

Any waiver, extension of time or other indulgence granted by us or our agents, successors or assigns, with respect to the License Agreement shall in no way modify or amend this Guaranty which shall be continuing, absolute, unconditional and irrevocable. This Guaranty may be assigned by us voluntarily or by operation of law without reducing or modifying the liability of the undersigned hereunder.

Our failure to enforce all or any portion of our rights under this Guaranty shall not constitute a waiver of our ability to do so at any point in the future.

[Guaranty continued on next page]

Except as otherwise provided below, any controversy or claim arising out of or relating to this Guaranty will be submitted to and settled by binding arbitration conducted in DeKalb County, Georgia, pursuant to the Commercial Arbitration Rules including, without limitation, the Optional Rules for Emergency Measures of Protection, of the American Arbitration Association, or any successor association. The undersigned acknowledge we have the right to consolidate any arbitration proceeding between the undersigned and us with any arbitration proceeding between us and the Licensee. Judgment on an arbitration award may be entered in any court having competent jurisdiction and shall be binding and final. In the event that any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding that failure to appear. Notwithstanding anything to the contrary herein, (i) actions seeking to validate our rights to our Proprietary Marks (as defined in the License Agreement), (ii) actions to enjoin the Licensee's use of our Proprietary Marks in violation of the License Agreement or our intellectual property rights, (iii) actions to collect any sums owed to us and/or our affiliates under this Guaranty (or any other agreement contemplated hereunder), or (iv) our claims against the undersigned for indemnification, may, at our discretion, either be submitted to arbitration hereunder or be the subject matter of litigation instituted by us. Any litigation initiated under this Guaranty shall be instituted exclusively at our discretion in the U.S. District Court for the Northern District of Georgia, Atlanta Division or in the Superior Court of DeKalb County, Georgia. The undersigned expressly agree that they are subject to the jurisdiction and venue of those courts for purposes of such litigation. The undersigned hereby waive and covenant never to assert any claim that they are not subject to personal jurisdiction in those courts or that venue in those courts is for any reason improper, inconvenient, prejudicial or otherwise inappropriate (including, without limitation, any claim under the judicial doctrine of forum non conveniens).

Except to the extent governed by federal law, including the Federal Arbitration Act, this Guaranty is to be exclusively construed in accordance with and/or governed by the law of the State of Georgia without recourse to Georgia (or any other) choice of law or conflicts of law principles. If, however, any provision of this Guaranty would not be enforceable under the laws of Georgia, and if the business franchised under the License Agreement is located outside of Georgia and the provision would be enforceable under the laws of the state in which the franchised business is located, then the provision (and only that provision) will be interpreted and construed under the laws of that state. Nothing in this Guaranty is intended to invoke the application of any franchise, business opportunity, antitrust, "implied covenant", unfair competition, fiduciary or other doctrine of law of the State of Georgia or any other state, which would not otherwise apply.

If we choose to proceed against the undersigned under this Guaranty whether in an arbitration proceeding or litigation, and we prevail, the undersigned shall reimburse us our costs and expenses associated with the proceeding or litigation, including our reasonable attorneys' fees, court costs and expenses.

The undersigned hereby specifically waives, presentment, notice, notice of protest, demand, notice of dishonor, and notice of default with respect to any obligation set forth in the License Agreement or this Guaranty.

The undersigned hereby specifically waives any rights that may be conferred by Official Code of Georgia Annotated Sections 10-7-23 and 10-7-24 or any similar provision of the applicable law of any other state.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Guaranty as of the date of the License Agreement.

Witness:

_Jim SRobinson_

Guarantors:

_Chhaya Patel_
Chhaya Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.: _____

Witness:

_Jim SRobinson_

_Dinesh Patel_
Dinesh S. Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.: _____

Witness:

_Jim SRobinson_

_Jayesh Patel_
Jayesh D. Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.: ████████

# EXHIBIT C

MAY-16-2004 00:59 From:
.... 01/07/2008 15:53    +043 32           USPS          To:14042357460      P.2/3
                                                                          PAGE 03/06

# THIRD ADDENDUM TO LICENSE AGREEMENT

This "THIRD ADDENDUM" is made and entered into as of this 25TH day of JANUARY , 2008, by and between Microtel Inns and Suites Franchising, Inc., a Georgia corporation ("Microtel") and V.A.L. ENTERPRISES, INC., a Virginia Corporation ("Licensee"). This Third Addendum supplements that certain License Agreement dated April 5, 2000 and amended February 4, 2002 and March 21, 2003 (as amended, the "Agreement") between the parties, relating to a license to operate a Microtel Inn & Suites hotel located at 131 Bristol East Road, Bristol, VA 24201 /#2654 (the "Hotel"). To the extent there is any conflict between the Agreement, the initial Addendum, the Second Addendum, and this Third Addendum, this Third Addendum shall govern and control.

1.   **Royalty Reduction.** Notwithstanding anything contained herein to the contrary, if you are in full compliance with the terms of this Agreement and all other agreements executed with Microtel and/or its affiliates, Paragraph 3.D(1)(a) of the Agreement is hereby amended to reflect the following new Royalty Fee schedule:

     a.   Commencing on the 1st day of January 2008 through the 31st day of December 2010, Licensee shall pay to Microtel a continuing monthly Royalty Fee of 5% of the Gross Room Revenues from the operation of the Hotel.

     b.   Commencing on the 1st day of January 2011 and thereafter, Licensee shall pay to Microtel a continuing monthly Royalty Fee of 6% of the Gross Room Revenues from the operation of the Hotel, as defined in Paragraph 3.D(1)(a) of the Agreement.

     c.   If, for any reason, you receive a notice of default and termination or the Agreement terminates prior to December 31, 2010, Licensee must pay Microtel a Royalty Fee of 6% (which would be inclusive of the percentage paid according to Paragraph 1(a) above) of the Gross Room Revenues from the operation of the Hotel for the period of January 1, 2008 through the effective date of such prior termination, in addition to any liquidated damages owed pursuant to Paragraph 10.D of the Agreement which such calculation of liquidated damages shall not include any previous Royalty Fee or Marketing/Reservation Contribution reductions, if any, or the Royalty Reduction as outlined above, and all other fees owed to Microtel and/or its affiliates pursuant to the terms of the Agreement.

     You shall not disclose the terms of this discount to anyone other than an authorized officer or employee or anyone who has a fiduciary relationship with you.

2.   The first sentence of Paragraph 10.D of the Agreement is hereby amended as follows:

     **10.D   Payment of Liquidated Damages:** If this Agreement terminates after December 31, 2010 and prior to its expiration for any reason other than as set forth in Paragraphs 9.A or 9.B, you agree to pay us liquidated damages as set forth below.

3.   The last sentence of Paragraph 10.D of the Agreement is hereby amended as follows:

     If this Agreement terminates prior to December 31, 2010, you agree to pay us liquidated damages equal to the greater of: (i) $2,000.00 multiplied by the number of Guest Rooms; or (ii) thirty-six (36) multiplied by the average monthly fees required under Paragraph 3.D(1)(a).

[addendum continues and signatures follow on next page]

MAY-16-2004 00:59 From:                                To:14042357460        P.3/3

01/07/2003  15:53                          USPS                        PAGE  04/05

Bristol, VA / #2654 – Microtel Inn & Suite:
Third Addendum to License Agreement
Page 2 of 2

4.    Licensee for itself and for its employees, officers, directors, agents, attorneys and assigns hereby releases and forever discharges Microtel and its present and former successors, assigns, parent corporations, subsidiaries, affiliated corporations and each of their respective officers, directors, agents, employees, attorneys and representatives, past or present, of and from any and all claims, representations, demands, causes of action, debts, losses, omissions, damages and liabilities, both contingent and fixed, known and unknown of every nature, kind and character whatsoever, at law or in equity, or otherwise which occurred or arose at any time prior to the execution of this Third Addendum (collectively the "Released Claims"). Licensee also covenants not to institute any litigation or legal or administrative proceeding, or otherwise assert any claim or set off, against Microtel and its present or former successors, assigns, parent corporations, subsidiaries, affiliated corporations and each of their respective officers, directors, agents, employees, attorneys and representatives, past or present, regarding any of the Released Claims.

5.    Except as expressly stated in this Third Addendum, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Third Addendum. All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement. Unless otherwise modified herein, all other terms and conditions of the Agreement remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Third Addendum as of the day and year first above written:

LICENSEE:
V.A.L. ENTERPRISES, INC.

By: _____        Attest: _____
    Jayesh Patel
    President

GUARANTORS:

By: _____        Witness: _____
    Chhaya Patel, legal signature

By: _____        Witness: _____
    Dinesh S. Patel, legal signature

By: _____        Witness: _____
    Jayesh D. Patel, legal signature

LICENSOR:
MICROTEL INNS AND SUITES FRANCHISING, INC.

By: _____        Attest: _____
    Roy F. Flora
    Executive Vice President
    and Chief Operating Officer

# EXHIBIT D

# GUARANTY

As an inducement to Microtel Inns and Suites Franchising, Inc. ("we," "our" or "us") to execute that certain license agreement (including any future amendments thereto) with V.A.L. Enterprises, Inc. ("Licensee") dated as of April 5, 2000, (collectively, the "License Agreement"), each of the undersigned for themselves, their heirs, successors, and assigns, do jointly and severally, hereby absolutely and unconditionally warrant to us and our parent, successors and assigns that all representations of Licensee contained in both the License Agreement and the application submitted in connection therewith are true and correct. The undersigned also jointly and severally agree to be personally bound by each and every covenant, term, condition, agreement and undertaking (including, without limitation, the timely payment and performance of all of Licensee's obligations under the License Agreement), contained and set forth in the License Agreement, and the full and prompt payment of any amounts, costs, expenses, claims, charges or liabilities incurred by us under the License Agreement or this Guaranty, including attorneys' fees and costs, related to the making, performance, or enforcement of the License Agreement or this Guaranty, and agree that this Guaranty shall be construed as though the undersigned and each of them executed agreement(s) containing the identical terms and conditions of the License Agreement.

If more than one person has executed this Guaranty, the term "the undersigned" as used herein, shall refer to each such person, and the liability of each of the undersigned hereunder shall be joint and several and primary as sureties.

The undersigned hereby agree that without the consent of or notice to any of the undersigned and without affecting any of the obligations of the undersigned hereunder: (a) any term, covenant or condition of the License Agreement may be amended, compromised, released or otherwise altered by us and the Licensee, and the undersigned do guarantee and promise to perform all the obligations of the Licensee under the License Agreement as so amended, compromised, released or altered; (b) any guarantor of or party to the License Agreement may be released, substituted or added; (c) any right or remedy under the License Agreement, this Guaranty or any other instrument or agreement between us and the Licensee may be exercised, not exercised, impaired, modified, limited, destroyed or suspended; and (d) we or any other person may deal in any manner with the Licensee, any of the undersigned, any party to the License Agreement or any other person.

Should Licensee be in breach or default under the License Agreement, we may proceed directly against any or each of the undersigned without first proceeding against or notifying the Licensee and without proceeding against any others of the undersigned. Upon notice from us that Licensee has failed to pay monies due and owing to us under the License Agreement, any and each of the undersigned agree to cure any monetary default within five (5) business days from such notice.

Notice to and demand upon Licensee or any of the undersigned shall be deemed notice to or demand upon Licensee and all of the undersigned, and no notice or demand need be made to or upon any or all of the undersigned. The cessation of or release from liability of Licensee or any of the undersigned shall not relieve any other of the undersigned from liability hereunder or under the License Agreement, except to the extent that the breach or default has been remedied or monies owed have been paid.

Upon the death of an undersigned, the estate of such undersigned shall be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death. The obligations of the surviving undersigned shall continue in full force and effect.

This Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the undersigned specifically waives any obligation we may have to proceed against the Licensee on any money or property held by the Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment or any of the guaranteed obligations is rescinded or must otherwise be restored or returned by us upon the insolvency, bankruptcy or reorganization of the Licensee or any of the undersigned, all as though such payment has not been made.

The undersigned expressly acknowledge that the obligations hereunder survive the termination of the License Agreement.

Any waiver, extension of time or other indulgence granted by us or our agents, successors or assigns, with respect to the License Agreement shall in no way modify or amend this Guaranty which shall be continuing, absolute, unconditional and irrevocable. This Guaranty may be assigned by us voluntarily or by operation of law without reducing or modifying the liability of the undersigned hereunder.

Our failure to enforce all or any portion of our rights under this Guaranty shall not constitute a waiver of our ability to do so at any point in the future.

[Guaranty continued on next page]

Except as otherwise provided below, any controversy or claim arising out of or relating to this Guaranty will be submitted to and settled by binding arbitration conducted in DeKalb County, Georgia, pursuant to the Commercial Arbitration Rules including, without limitation, the Optional Rules for Emergency Measures of Protection, of the American Arbitration Association, or any successor association. The undersigned acknowledge we have the right to consolidate any arbitration proceeding between the undersigned and us with any arbitration proceeding between us and the Licensee. Judgment on an arbitration award may be entered in any court having competent jurisdiction and shall be binding and final. In the event that any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding that failure to appear. Notwithstanding anything to the contrary herein, (i) actions seeking to validate our rights to our Proprietary Marks (as defined in the License Agreement), (ii) actions to enjoin the Licensee's use of our Proprietary Marks in violation of the License Agreement or our intellectual property rights, (iii) actions to collect any sums owed to us and/or our affiliates under this Guaranty (or any other agreement contemplated hereunder), or (iv) our claims against the undersigned for indemnification, may, at our discretion, either be submitted to arbitration hereunder or be the subject matter of litigation instituted by us. Any litigation initiated under this Guaranty shall be instituted exclusively at our discretion in the U.S. District Court for the Northern District of Georgia, Atlanta Division or in the Superior Court of DeKalb County, Georgia. The undersigned expressly agree that they are subject to the jurisdiction and venue of those courts for purposes of such litigation. The undersigned hereby waive and covenant never to assert any claim that they are not subject to personal jurisdiction in those courts or that venue in those courts is for any reason improper, inconvenient, prejudicial or otherwise inappropriate (including, without limitation, any claim under the judicial doctrine of forum non conveniens).

Except to the extent governed by federal law, including the Federal Arbitration Act, this Guaranty is to be exclusively construed in accordance with and/or governed by the law of the State of Georgia without recourse to Georgia (or any other) choice of law or conflicts of law principles. If, however, any provision of this Guaranty would not be enforceable under the laws of Georgia, and if the business franchised under the License Agreement is located outside of Georgia and the provision would be enforceable under the laws of the state in which the franchised business is located, then the provision (and only that provision) will be interpreted and construed under the laws of that state. Nothing in this Guaranty is intended to invoke the application of any franchise, business opportunity, antitrust, "implied covenant", unfair competition, fiduciary or other doctrine of law of the State of Georgia or any other state, which would not otherwise apply.

If we choose to proceed against the undersigned under this Guaranty whether in an arbitration proceeding or litigation, and we prevail, the undersigned shall reimburse us our costs and expenses associated with the proceeding or litigation, including our reasonable attorneys' fees, court costs and expenses.

The undersigned hereby specifically waives, presentment, notice, notice of protest, demand, notice of dishonor, and notice of default with respect to any obligation set forth in the License Agreement or this Guaranty.

The undersigned hereby specifically waives any rights that may be conferred by Official Code of Georgia Annotated Sections 10-7-23 and 10-7-24 or any similar provision of the applicable law of any other state.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Guaranty as of the date of the License Agreement.

Witness:

_Jim LRobinson_

Witness:

_Jim LRobinson_

Witness:

_Jim LRobinson_

Guarantors: _Chhaya Patel_

Chhaya Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.:

_N Patel_

Dinesh S. Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.:

_Jayesh Patel_

Jayesh D. Patel, Legal Signature
Address: 101 Brookwood Drive, Bristol, TN 37620
Telephone No.: (423) 574-9917
Social Security No.: ████████

# EXHIBIT E



# WYNDHAM

### HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

January 15, 2013

**VIA 2 DAY DELIVERY METHOD**

Mr. Jayesh Patel
V.A.L. Enterprises, Inc.
321 North Cedar Bluff Road
Knoxville, TN 37923

RE:    **NOTICE OF MONETARY DEFAULT RELATING TO MICROTEL® UNIT #29673-79897-1 LOCATED IN BRISTOL, VA (THE "FACILITY")**

Dear Mr. Patel:

I write on behalf of MICROTEL INNS AND SUITES FRANCHISING, INC. ("we," "our," or "us") regarding the License Agreement dated April 5, 2000, as amended, between V.A.L. ENTERPRISES, INC. ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of January 9, 2013 your account is past due in the amount of **$113,268.25**. We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have thirty (30) days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Microtel System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default, such as suspending the Facility's access to our central reservation system. By copy of this letter, we are also informing your guarantors of your default as well any lender with which we have an agreement regarding the Facility.



      

        

We hope you will take this opportunity to resolve your monetary default.  If you have any questions regarding your default or how it can be timely cured, please Operations Support Desk, at (877) 299-2970.

Sincerely yours,

Suzanne Fenimore
Senior Director
Contracts Compliance, Legal

Enclosure

cc:     Chhaya Patel (Guarantor) – 101 Brookwood Drive, Bristol, TN  37620
        Dinesh Patel (Guarantor) – 101 Brookwood Drive, Bristol, TN  37620
        Virginia Asset Financing Corporation (Lender)
        Patrick Breen
        Mona Christian

Page 1 of 10

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

As of Date (DD-MMM-YYYY): 09-JAN-2013
Customer No              : 29673-79897-01-MTL
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               : No Bankruptcy Sites
Disputed                 : No
Finance Charges Included: Yes

Page 1 of 8

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No :  29673-79897-01-MTL
Address :      131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:    09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| AUG-2011 | 10557544 | 11-AUG-11 | GUEST SATISFACT | | 10.00 | 0.00 | 6.20 | 16.20 |
| | 41889777 | 31-AUG-11 | Actual-1000A-RO | | 6156.24 | 0.00 | 1288.66 | 7444.90 |
| | 30612385 | 31-AUG-11 | HughesNet VSAT | | 9.52 | 0.48 | 0.00 | 10.00 |
| | | | | Sub Total | 6175.76 | 0.48 | 1294.86 | 7471.10 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3355243901

1/9/2013

| SEP-2011 | 30623757 | 15-SEP-11 | ONLINE LRNG LIB | 50.00 | 0.00 | 10.72 | 60.72 |
| | 54012677 | 22-SEP-11 | WYNREWARDS CRDT | (75.18) | 0.00 | 0.00 | (75.18) |
| | 54012455 | 22-SEP-11 | WYNREWARDS 5% | 1161.06 | 0.00 | 243.87 | 1404.93 |
| | 1242985 | 29-SEP-11 | GDS & INTERNET | 235.10 | 0.00 | 48.54 | 283.64 |
| | TA0242985 | 29-SEP-11 | T/A COMMISSIONS | 679.64 | 0.00 | 140.29 | 819.93 |
| | TR0242985 | 29-SEP-11 | TMC / CONSORTIA | 221.37 | 0.00 | 45.70 | 267.07 |
| | TC0242985 | 29-SEP-11 | T/A COMM SERVIC | 74.23 | 0.00 | 15.31 | 89.54 |
| | TM0242985 | 29-SEP-11 | MEMBER BENEFIT | 310.14 | 0.00 | 64.06 | 374.20 |
| | 41912350 | 30-SEP-11 | 5096A-SOFTHOTEL | 259.98 | 13.00 | 56.20 | 329.18 |
| | 41924222 | 30-SEP-11 | Actual-1217A-MI | 1400.54 | 0.00 | 288.53 | 1689.07 |
| | 41922390 | 30-SEP-11 | Actual-1000A-RO | 4201.62 | 0.00 | 865.54 | 5067.16 |
| | 30633844 | 30-SEP-11 | HughesNet VSAT | 160.00 | 8.00 | 34.58 | 202.58 |
| | | | Sub Total | 8678.50 | 21.00 | 1813.34 | 10512.84 |
| OCT-2011 | 54013037 | 22-OCT-11 | WYNREWARDS 5% | 776.22 | 0.00 | 151.34 | 927.56 |
| | 54013360 | 22-OCT-11 | WYNREWARDS CRDT | (40.50) | 0.00 | 0.00 | (40.50) |
| | TM0249665 | 27-OCT-11 | MEMBER BENEFIT | 182.80 | 0.00 | 35.16 | 217.96 |
| | TR0249665 | 27-OCT-11 | TMC / CONSORTIA | 2.33 | 0.00 | 0.45 | 2.78 |
| | TA0249665 | 27-OCT-11 | T/A COMMISSIONS | 246.45 | 0.00 | 47.45 | 293.90 |
| | 1249665 | 27-OCT-11 | GDS & INTERNET | 225.20 | 0.00 | 43.36 | 268.56 |
| | TC0249665 | 27-OCT-11 | T/A COMM SERVIC | 32.21 | 0.00 | 6.20 | 38.41 |
| | 30641346 | 31-OCT-11 | ACH102511 | 100.00 | 0.00 | 19.05 | 119.05 |
| | 41955321 | 31-OCT-11 | Actual-1217A-MI | 1532.68 | 0.00 | 292.00 | 1824.68 |
| | 41953073 | 31-OCT-11 | Actual-1000A-RO | 4598.04 | 0.00 | 875.93 | 5473.97 |
| | 41939370 | 31-OCT-11 | 5715A-HughesNet | 160.00 | 8.00 | 31.98 | 199.98 |
| | 41938929 | 31-OCT-11 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 54.59 | 341.22 |

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No  :  29673-79897-01-MTL
Address  :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
|----------|------------|--------------|-------------|---------|---------|------------|-----------------|-------|
| | | | | Sub Total | 8098.41 | 21.65 | 1557.51 | 9667.57 |
| NOV-2011 | 10581872 | 16-NOV-11 | GUEST SATISFACT | | 30.00 | 0.00 | 5.51 | 35.51 |
| | 54013639 | 22-NOV-11 | WYNREWARDS 5% | | 1059.30 | 0.00 | 190.15 | 1249.45 |
| | 54013703 | 22-NOV-11 | WYNREWARDS CRDT | | (36.39) | 0.00 | 0.00 | (36.39) |
| | TCO256236 | 28-NOV-11 | T/A COMM SERVIC | | 16.43 | 0.00 | 2.89 | 19.32 |
| | TMO256236 | 28-NOV-11 | MEMBER BENEFIT | | 126.76 | 0.00 | 22.34 | 149.10 |
| | 1256236 | 28-NOV-11 | GDS & INTERNET | | 214.00 | 0.00 | 37.79 | 251.79 |
| | TRO256236 | 28-NOV-11 | TMC / CONSORTIA | | 18.43 | 0.00 | 3.30 | 21.73 |
| | TAO256236 | 28-NOV-11 | T/A COMMISSIONS | | 92.13 | 0.00 | 16.27 | 108.40 |
| | 41985104 | 30-NOV-11 | Actual-1217A-MI | | 1112.97 | 0.00 | 195.30 | 1308.27 |
| | 41966896 | 30-NOV-11 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 50.29 | 336.92 |
| | 41968982 | 30-NOV-11 | 5715A-HughesNet | | 160.00 | 8.00 | 29.46 | 197.46 |
| | 41986655 | 30-NOV-11 | Actual-1000A-RO | | 3338.92 | 0.00 | 585.94 | 3924.86 |
| | | | | Sub Total | 6405.53 | 21.65 | 1139.24 | 7566.42 |
| DEC-2011 | 10586808 | 21-DEC-11 | GUEST SATISFACT | | 40.00 | 0.00 | 6.60 | 46.60 |
| | 54014087 | 22-DEC-11 | WYNREWARDS CRDT | | (232.09) | 0.00 | 0.00 | (232.09) |
| | 54014415 | 22-DEC-11 | WYNREWARDS 5% | | 396.08 | 0.00 | 65.15 | 461.23 |
| | 1262354 | 28-DEC-11 | GDS & INTERNET | | 41.60 | 0.00 | 6.68 | 48.28 |
| | TRO262354 | 28-DEC-11 | TMC / CONSORTIA | | 2.21 | 0.00 | 0.32 | 2.53 |
| | TAO262354 | 28-DEC-11 | T/A COMMISSIONS | | 19.31 | 0.00 | 3.12 | 22.43 |
| | TCO262354 | 28-DEC-11 | T/A COMM SERVIC | | 8.32 | 0.00 | 1.33 | 9.65 |
| | TMO262354 | 28-DEC-11 | MEMBER BENEFIT | | 90.80 | 0.00 | 14.67 | 105.47 |
| | 42000411 | 31-DEC-11 | 5715A-HughesNet | | 160.00 | 8.00 | 26.86 | 194.86 |
| | 42017653 | 31-DEC-11 | Actual-1217A-MI | | 1182.23 | 0.00 | 189.12 | 1371.35 |
| | 41998643 | 31-DEC-11 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 45.85 | 332.48 |
| | 42016368 | 31-DEC-11 | Actual-1000A-RO | | 3546.69 | 0.00 | 567.45 | 4114.14 |
| | | | | Sub Total | 5528.13 | 21.65 | 927.15 | 6476.93 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3355243901          1/9/2013

Report Date : 09-JAN-13

ITEMIZED STATEMENT
-------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road, BRISTOL, VA, 24202, US
As of Date:     09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| JAN-2012 | 54014796 | 22-JAN-12 | WYNREWARDS 5% | | 453.70 | 0.00 | 67.61 | 521.31 |
| | 54014571 | 22-JAN-12 | WYNREWARDS CRDT | | (38.61) | 0.00 | 0.00 | (38.61) |
| | TA0268693 | 27-JAN-12 | T/A COMMISSIONS | | 31.38 | 0.00 | 4.61 | 35.99 |
| | TM0268693 | 27-JAN-12 | MEMBER BENEFIT | | 359.04 | 0.00 | 52.64 | 411.68 |
| | 1268693 | 27-JAN-12 | GDS & INTERNET | | 140.65 | 0.00 | 20.61 | 161.26 |
| | TC0268693 | 27-JAN-12 | T/A COMM SERVIC | | 29.79 | 0.00 | 4.37 | 34.16 |
| | 42047501 | 31-JAN-12 | Actual-1000A-RO | | 3193.81 | 0.00 | 461.50 | 3655.31 |
| | 42031562 | 31-JAN-12 | 5715A-HughesNet | | 160.00 | 0.00 | 24.26 | 192.26 |
| | 42030064 | 31-JAN-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 41.41 | 328.04 |
| | 42049771 | 31-JAN-12 | Actual-1217A-MI | | 1064.60 | 0.00 | 153.83 | 1218.43 |
| | | | | Sub Total | 5667.34 | 21.65 | 830.84 | 6519.83 |
| FEB-2012 | 30664030 | 13-FEB-12 | JUN 2011 NT AUD | | 279.90 | 0.00 | 38.64 | 318.54 |
| | 30664009 | 13-FEB-12 | JUN 2011 NT AUD | | 839.71 | 0.00 | 115.92 | 955.63 |
| | 54015443 | 22-FEB-12 | WYNREWARDS CRDT | | (30.93) | 0.00 | 0.00 | (30.93) |
| | 54015415 | 22-FEB-12 | WYNREWARDS 5% | | 369.05 | 0.00 | 49.28 | 418.33 |
| | TA0275192 | 24-FEB-12 | T/A COMMISSIONS | | 41.34 | 0.00 | 5.47 | 46.91 |
| | TC0275192 | 24-FEB-12 | T/A COMM SERVIC | | 7.81 | 0.00 | 1.04 | 8.85 |
| | 1275192 | 24-FEB-12 | GDS & INTERNET | | 52.50 | 0.00 | 6.95 | 59.45 |
| | TR0275192 | 24-FEB-12 | TMC / CONSORTIA | | 13.82 | 0.00 | 1.83 | 15.65 |
| | TM0275192 | 24-FEB-12 | MEMBER BENEFIT | | 58.00 | 0.00 | 7.69 | 65.69 |
| | 42077437 | 29-FEB-12 | Actual-1217A-MI | | 1169.25 | 0.00 | 151.99 | 1321.24 |
| | 42061148 | 29-FEB-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 37.25 | 323.88 |
| | 42063315 | 29-FEB-12 | 5715A-HughesNet | | 160.00 | 0.00 | 21.82 | 189.82 |
| | 42076983 | 29-FEB-12 | Actual-1000A-RO | | 3507.76 | 0.00 | 456.02 | 3963.78 |
| | | | | Sub Total | 6741.19 | 21.65 | 893.90 | 7656.74 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3355243901

1/9/2013

| MAR-2012 | 30670551 | 08-MAR-12 | ACH022112 | 100.00 | 0.00 | 12.60 | 112.60 |
| | 54015681 | 22-MAR-12 | WYNREWARDS 5% | 676.39 | 0.00 | 80.49 | 756.88 |
| | 54016078 | 22-MAR-12 | WYNREWARDS CRDT | (71.53) | 0.00 | 0.00 | (71.53) |
| | 42094789 | 31-MAR-12 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 32.81 | 319.44 |
| | 42093903 | 31-MAR-12 | 5715A-HughesNet | 160.00 | 8.00 | 19.22 | 187.22 |
| | 42111612 | 31-MAR-12 | Actual-1217A-M1 | 1482.20 | 0.00 | 169.39 | 1651.59 |

Page 4 of 8

Report Date : 09-JAN-13

ITEMIZED STATEMENT
-------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road, BRISTOL, VA, 24202, US
As of Date:     09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | 42110853 | 31-MAR-12 | Actual-1000A-RO | | 4446.60 | 0.00 | 508.23 | 4954.83 |
| | | | | Sub Total | 7066.64 | 21.65 | 822.74 | 7911.03 |
| APR-2012 | TM0281396 | 09-APR-12 | MEMBER BENEFIT | | 56.00 | 0.00 | 6.17 | 62.17 |
| | 1281396 | 09-APR-12 | GDS & INTERNET | | 69.35 | 0.00 | 7.61 | 76.96 |
| | TC0281396 | 09-APR-12 | T/A COMM SERVIC | | 8.15 | 0.00 | 0.90 | 9.05 |
| | TA0281396 | 09-APR-12 | T/A COMMISSIONS | | 52.60 | 0.00 | 5.81 | 58.41 |
| | TR0281396 | 09-APR-12 | TMC / CONSORTIA | | 98.72 | 0.00 | 10.86 | 109.58 |
| | 54016106 | 22-APR-12 | WYNREWARDS 5% | | 590.12 | 0.00 | 61.08 | 651.20 |
| | 54016386 | 22-APR-12 | WYNREWARDS CRDT | | (32.75) | 0.00 | 0.00 | (32.75) |
| | TA0287797 | 25-APR-12 | T/A COMMISSIONS | | 67.38 | 0.00 | 6.86 | 74.24 |
| | 1287797 | 25-APR-12 | GDS & INTERNET | | 57.45 | 0.00 | 5.85 | 63.30 |
| | TM0287797 | 25-APR-12 | MEMBER BENEFIT | | 76.80 | 0.00 | 7.83 | 84.63 |
| | TR0287797 | 25-APR-12 | TMC / CONSORTIA | | 2.16 | 0.00 | 0.20 | 2.36 |
| | TC0287797 | 25-APR-12 | T/A COMM SERVIC | | 10.81 | 0.00 | 1.10 | 11.91 |
| | 42132740 | 30-APR-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 28.51 | 315.14 |
| | 42140550 | 30-APR-12 | Actual-1000A-RO | | 3477.18 | 0.00 | 345.98 | 3823.16 |

Page 6 of 10

| | | | Billing | Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|
| 42134112 | 30-APR-12 | 5715A-HughesNet | 160.00 | 8.00 | 16.70 | 184.70 |
| 42137927 | 30-APR-12 | Actual-1217A-MI | 1159.06 | 0.00 | 115.35 | 1274.41 |
| | | Sub Total | 6126.03 | 21.65 | 620.81 | 6768.47 |
| MAY-2012 42173737 | 31-MAY-12 | Actual-1000A-RO | 3000.00 | 0.00 | 252.00 | 3252.00 |
| | | Sub Total | 3000.00 | 0.00 | 252.00 | 3252.00 |
| JUN-2012 42199314 | 30-JUN-12 | Actual-1000A-RO | 4019.60 | 0.00 | 277.34 | 4296.94 |
| | | Sub Total | 4019.60 | 0.00 | 277.34 | 4296.94 |

Page 5 of 8

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No :  29673-79897-01-MTL
Address :      131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:    09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|---|---|
| JUL-2012 | 54018089 | 22-JUL-12 | WYNREWARDS 5% | | 670.33 | 0.00 | 38.87 | 709.20 |
| | 1306802 | 25-JUL-12 | GDS & INTERNET | | 164.30 | 0.00 | 9.28 | 173.58 |
| | TM0306802 | 25-JUL-12 | MEMBER BENEFIT | | 140.40 | 0.00 | 7.94 | 148.34 |
| | TA0306802 | 25-JUL-12 | T/A COMMISSIONS | | 477.88 | 0.00 | 27.01 | 504.89 |
| | TR0306802 | 25-JUL-12 | TMC / CONSORTIA | | 148.30 | 0.00 | 8.37 | 156.67 |
| | TC0306802 | 25-JUL-12 | T/A COMM SERVIC | | 47.01 | 0.00 | 2.67 | 49.68 |
| | 42216579 | 30-JUL-12 | 5715A-HughesNet | | 160.00 | 8.00 | 9.07 | 177.07 |
| | 42218251 | 30-JUL-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 15.48 | 302.11 |

| | 42233833 | 31-JUL-12 | Accrual-1000A-R | * | 4277.76 | 0.00 | 228.87 | 4506.63 |
| | 42235489 | 31-JUL-12 | Accrual-1217A-M | | 1425.92 | 0.00 | 76.29 | 1502.21 |
| | | | Sub Total | | 7784.88 | 21.65 | 423.85 | 8230.38 |
| AUG-2012 | 54018687 | 22-AUG-12 | WYNREWARDS 5% | | 1009.33 | 0.00 | 42.89 | 1052.22 |
| | TM0313519 | 24-AUG-12 | MEMBER BENEFIT | | 17.76 | 0.00 | 0.75 | 18.51 |
| | TC0313519 | 24-AUG-12 | T/A COMM SERVIC | | 2.22 | 0.00 | 0.08 | 2.30 |
| | 42252103 | 31-AUG-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 10.89 | 297.52 |
| | 42264998 | 31-AUG-12 | Accrual-1000A-R | * | 4576.44 | 0.00 | 173.90 | 4750.34 |
| | 42251516 | 31-AUG-12 | 5715A-HughesNet | | 160.00 | 8.00 | 6.38 | 174.38 |
| | 42266885 | 31-AUG-12 | Accrual-1217A-M | | 1525.48 | 0.00 | 57.96 | 1583.44 |
| | | | Sub Total | | 7564.21 | 21.65 | 292.85 | 7878.71 |
| SEP-2012 | 54019036 | 22-SEP-12 | WYNREWARDS 5% | | 1006.93 | 0.00 | 27.18 | 1034.11 |
| | TA0319677 | 25-SEP-12 | TMC / CONSORTIA | | 5.32 | 0.00 | 0.14 | 5.46 |
| | 1319677 | 25-SEP-12 | GDS & INTERNET | | 28.25 | 0.00 | 0.72 | 28.97 |
| | TC0319677 | 25-SEP-12 | T/A COMM SERVIC | | 2.27 | 0.00 | 0.05 | 2.32 |
| | TA0319677 | 25-SEP-12 | T/A COMMISSIONS | | 30.20 | 0.00 | 0.77 | 30.97 |
| | 42296403 | 30-SEP-12 | Accrual-1217A-M | * | 1065.02 | 0.00 | 24.50 | 1089.52 |
| | 42277758 | 30-SEP-12 | 5096A-SOFTHOTEL | | 272.97 | 13.65 | 6.59 | 293.21 |
| | 42295057 | 30-SEP-12 | Accrual-1000A-R | * | 3195.06 | 0.00 | 73.49 | 3268.55 |
| | 42277908 | 30-SEP-12 | 5715A-HughesNet | | 160.00 | 8.00 | 3.86 | 171.86 |

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     09-JAN-2013

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3355243901                    1/9/2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 5766.02 | 21.65 | 137.30 | 5924.97 |
| OCT-2012 | 30724947 | 02-OCT-12 | ONLINE LRNG LIB | | 50.00 | 0.00 | 1.10 | 51.10 |
| | 54019647 | 22-OCT-12 | WYNREWARDS 5% | | 457.13 | 0.00 | 5.49 | 462.62 |
| | TC0326484 | 28-OCT-12 | T/A COMM SERVIC | | 3.35 | 0.00 | 0.03 | 3.38 |
| | 1326484 | 28-OCT-12 | GDS & INTERNET | | 10.90 | 0.00 | 0.10 | 11.00 |
| | TA0326484 | 28-OCT-12 | T/A COMMISSIONS | | 6.30 | 0.00 | 0.06 | 6.36 |
| | TM0326484 | 28-OCT-12 | MEMBER BENEFIT | | 38.40 | 0.00 | 0.35 | 38.75 |
| | 42309313 | 31-OCT-12 | 5715A-HughesNet | | 160.00 | 8.00 | 1.26 | 169.26 |
| | 42310839 | 31-OCT-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 2.15 | 288.78 |
| | 42327555 | 31-OCT-12 | Accrual-1217A-M | · | 972.84 | 0.00 | 7.30 | 980.14 |
| | 42326338 | 31-OCT-12 | Accrual-1000A-R | | 2918.52 | 0.00 | 21.89 | 2940.41 |
| | | | | Sub Total | 4890.42 | 21.65 | 39.73 | 4951.80 |
| NOV-2012 | 1333040 | 19-NOV-12 | GDS & INTERNET | | 4.95 | 0.00 | 0.00 | 4.95 |
| | 54019979 | 22-NOV-12 | WYNREWARDS 5% | | 502.73 | 0.00 | 0.00 | 502.73 |
| | TM0326649 | 26-NOV-12 | MEMBER BENEFIT | | 11.84 | 0.00 | 0.00 | 11.84 |
| | 42342023 | 30-NOV-12 | 5715A-HughesNet | | 160.00 | 8.00 | 0.00 | 168.00 |
| | 42356378 | 30-NOV-12 | Accrual-1217A-M | · | 810.86 | 0.00 | 0.00 | 810.86 |
| | 42342543 | 30-NOV-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 0.00 | 286.63 |
| | 42355920 | 30-NOV-12 | Accrual-1000A-R | | 2432.58 | 0.00 | 0.00 | 2432.58 |
| | | | | Sub Total | 4195.94 | 21.65 | 0.00 | 4217.59 |
| DEC-2012 | 54020781 | 22-DEC-12 | WYNREWARDS 5% | | 332.38 | 0.00 | 0.00 | 332.38 |
| | 42390176 | 31-DEC-12 | Accrual-1217A-M | · | 794.48 | 0.00 | 0.00 | 794.48 |
| | 42371585 | 31-DEC-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 0.00 | 286.63 |
| | 42388032 | 31-DEC-12 | Accrual-1000A-R | | 2383.44 | 0.00 | 0.00 | 2383.44 |
| | 42371715 | 31-DEC-12 | 5715A-HughesNet | | 160.00 | 8.00 | 0.00 | 168.00 |

Report Date : 09-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road, BRISTOL, VA, 24202, US
As of Date:     09-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| | | | | Sub Total | 3943.28 | 21.65 | 0.00 | 3964.93 |
| | | | | Grand Total | 101641.86 | 302.93 | 11323.46 | 113268.25 |

Requested By: Jerilyn Marino

· Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

······· END OF REPORT ·······

UPS CampusShip: Shipment Receipt                                    Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 15 Jan 2013          **Tracking Number:**        1Z22445X0290890151

**1** Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| V.A.L. ENTERPRISES, INC. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| MR. JAYESH PATEL | Jerilyn Marino | Jerilyn Marino |
| 321 NORTH CEDAR BLUFF ROAD | 22 Sylvan Way | 22 Sylvan Way |
| KNOXVILLE TN 379234507 | Parsippany NJ 07054 | Parsippany NJ 07054 |
|  | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |

**2** Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. Letter | UPS Letter |  | Reference # 1 - 006-1696 |

**3** UPS Shipping Service and Shipping Options

Service:                          UPS 2nd Day Air
Guaranteed By:                    End of Day Thursday, Jan 17, 2013
Shipping Fees Subtotal:           **14.60 USD**
    Transportation               13.15 USD
    Fuel Surcharge               1.45 USD

**4** Payment Information

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 14.60 USD |
| Negotiated Total: | 5.67 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt                                          Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 15 Jan 2013          **Tracking Number:**          1Z22445X0291284966

| 1 | Address Information |
|---|---|

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| V.A.L. ENTERPRISES, INC. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| CHHAYA PATEL/DINESH PATEL | Jerilyn Marino | Jerilyn Marino |
| 101 BROOKWOOD DRIVE | 22 Sylvan Way | 22 Sylvan Way |
| BRISTOL TN 376202806 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| Residential | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |

| 2 | Package Information |
|---|---|

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

| 3 | UPS Shipping Service and Shipping Options |
|---|---|

| Service: | UPS 2nd Day Air |
|---|---|
| Guaranteed By: | End of Day Thursday, Jan 17, 2013 |
| Shipping Fees Subtotal: | 18.15 USD |
| Transportation | 13.15 USD |
| Fuel Surcharge | 1.80 USD |
| Residential Surcharge | 3.20 USD |

| 4 | Payment Information |
|---|---|

| Bill Shipping Charges to: | Shipper's Account 22445X |
|---|---|

**A discount has been applied to the Daily rates for this shipment**

| Total Charged: | 18.15 USD |
|---|---|
| Negotiated Total: | 7.53 USD |

**Note: Your Invoice may vary from the displayed reference rates.**
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt                                          Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 15 Jan 2013                **Tracking Number:**     1Z22445X0292555573

┌─┐
│1│ Address Information
└─┘

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Virginia Asset Financing Corp | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Virginia Asset Financing Corp | Jerilyn Marino | Jerilyn Marino |
| 4165 Chain Bridge Road | 22 Sylvan Way | 22 Sylvan Way |
| FAIRFAX VA 220304102 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |

┌─┐
│2│ Package Information
└─┘

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

┌─┐
│3│ UPS Shipping Service and Shipping Options
└─┘

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Jan 17, 2013 |
| Shipping Fees Subtotal: | 14.04 USD |
|    Transportation | 12.65 USD |
|    Fuel Surcharge | 1.39 USD |

┌─┐
│4│ Payment Information
└─┘

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | **14.04 USD** |
| Negotiated Total: | **5.67 USD** |

**Note: Your invoice may vary from the displayed reference rates.**
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT F





Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

March 5, 2013

**VIA 2 DAY DELIVERY METHOD**

Mr. Jayesh Patel
V.A.L. Enterprises, Inc.
321 North Cedar Bluff Road
Knoxville, TN 37923

**RE:    NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO MICROTEL® UNIT #29673-79897-1 LOCATED IN BRISTOL, VA (THE "FACILITY")**

Dear Mr. Patel:

I write on behalf of MICROTEL INNS AND SUITES FRANCHISING, INC. ("we" or "us") regarding the License Agreement dated May 5, 2000, as amended, between V.A.L. ENTERPRISES, INC. ("you" or "your") and us (the "Agreement").   You will recall that, on January 15, 2013, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within thirty (30) days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement immediately upon written notice to you.  We would prefer, however, to keep our affiliation with you.  Accordingly, we will allow you an additional period of ten (10) days from the date of this letter to cure your default.  Please be advised that as of March 4, 2013, your account is now past due in the amount of **$125,470.18**.  We have enclosed the statement detailing the fees past due.  Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period.  We are simply giving you a final opportunity to avoid termination.  By copy of this letter, we are also informing your guarantors of your default as well any lender with which we have an agreement regarding the Facility.



      

        

We hope you will take this opportunity to resolve your monetary default.  If you have any questions regarding your default or how it can be timely cured, please call Operations Support Desk, at (877) 299-2970.

Sincerely yours,

Suzanne Fenimore
Senior Director
Contracts Compliance, Legal

Enclosure

cc:    Chhaya Patel (Guarantor) – 101 Brookwood Drive, Bristol, TN 37620
       Dinesh Patel (Guarantor) – 101 Brookwood Drive, Bristol, TN 37620
       Virginia Asset Financing Corporation (Lender)
       Patrick Breen
       Mona Christian

Report Date : 04-MAR-13

ITEMIZED STATEMENT
--------------------

```
As of Date (DD-MMM-YYYY):  04-MAR-2013
Customer No              :  29673-79897-01-MTL
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               :  No Bankruptcy Sites
Disputed                 :  No
Finance Charges Included :  Yes
```

Page 1 of 9

Report Date : 04-MAR-13

ITEMIZED STATEMENT
--------------------

```
Customer No :  29673-79897-01-MTL
Address     :  131 Bristol East Road, BRISTOL, VA, 24202, US
As of Date:    04-MAR-2013
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| AUG-2011 | 10557544 | 11-AUG-11 | GUEST SATISFACT | | 10.00 | 0.00 | 6.20 | 16.20 |
| | 30612385 | 31-AUG-11 | HughesNet VSAT | | 9.52 | 0.48 | 0.00 | 10.00 |
| | 41889777 | 31-AUG-11 | Actual-1000A-RO | | 6156.24 | 0.00 | 1462.82 | 7619.06 |
| | | | | Sub Total | 6175.76 | 0.48 | 1469.02 | 7645.26 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3855740337                    3/4/2013

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| SEP-2011 | 30623757 | 15-SEP-11 | ONLINE LRNG LIB | 50.00 | 0.00 | 12.24 | 62.24 |
| | 54012455 | 22-SEP-11 | WYNREWARDS 5% | 1161.06 | 0.00 | 279.87 | 1440.93 |
| | 54012677 | 22-SEP-11 | WYNREWARDS CRDT | (75.18) | 0.00 | 0.00 | (75.18) |
| | TR0242985 | 29-SEP-11 | TMC / CONSORTIA | 221.37 | 0.00 | 52.46 | 273.83 |
| | TC0242985 | 29-SEP-11 | T/A COMM SERVIC | 74.23 | 0.00 | 17.61 | 91.84 |
| | TM0242985 | 29-SEP-11 | MEMBER BENEFIT | 310.14 | 0.00 | 73.68 | 383.82 |
| | TA0242985 | 29-SEP-11 | T/A COMMISSIONS | 679.64 | 0.00 | 161.35 | 840.99 |
| | 1242985 | 29-SEP-11 | GDS & INTERNET | 235.10 | 0.00 | 55.72 | 290.82 |
| | 30633844 | 30-SEP-11 | HughesNet VSAT | 160.00 | 8.00 | 39.78 | 207.78 |
| | 41922390 | 30-SEP-11 | Actual-1000A-RO | 4201.62 | 0.00 | 995.80 | 5197.42 |
| | 41912350 | 30-SEP-11 | 5096A-SOFTHOTEL | 259.98 | 13.00 | 64.66 | 337.64 |
| | 41924222 | 30-SEP-11 | Actual-1217A-MI | 1400.54 | 0.00 | 331.95 | 1732.49 |
| | | | Sub Total | 8678.50 | 21.00 | 2085.12 | 10784.62 |
| OCT-2011 | 54013360 | 22-OCT-11 | WYNREWARDS CRDT | (40.50) | 0.00 | 0.00 | (40.50) |
| | 54013037 | 22-OCT-11 | WYNREWARDS 5% | 776.22 | 0.00 | 175.40 | 951.62 |
| | 1249665 | 27-OCT-11 | GDS & INTERNET | 225.20 | 0.00 | 50.34 | 275.54 |
| | TR0249665 | 27-OCT-11 | TMC / CONSORTIA | 2.33 | 0.00 | 0.53 | 2.86 |
| | TA0249665 | 27-OCT-11 | T/A COMMISSIONS | 246.45 | 0.00 | 55.09 | 301.54 |
| | TC0249665 | 27-OCT-11 | T/A COMM SERVIC | 32.21 | 0.00 | 7.20 | 39.41 |
| | TM0249665 | 27-OCT-11 | MEMBER BENEFIT | 182.80 | 0.00 | 40.82 | 223.62 |
| | 41953073 | 31-OCT-11 | Actual-1000A-RO | 4598.04 | 0.00 | 1018.47 | 5616.51 |
| | 30641346 | 31-OCT-11 | ACH102511 | 100.00 | 0.00 | 22.15 | 122.15 |
| | 41938929 | 31-OCT-11 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 63.47 | 350.10 |
| | 41939370 | 31-OCT-11 | 5715A-HughesNet | 160.00 | 8.00 | 37.18 | 205.18 |
| | 41955321 | 31-OCT-11 | Actual-1217A-MI | 1532.68 | 0.00 | 339.52 | 1872.20 |

Report Date : 04-MAR-13

ITEMIZED STATEMENT
--------------------

Customer No :  29673-79897-01-MTL
Address    :    131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:    04-MAR-2013

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3855740337

3/4/2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----------|----------------|-------|
| | | | | | Sub Total | 8089.41 | 21.65 | 1810.17 | 9920.23 |
| NOV-2011 | 10581872 | 16-NOV-11 | GUEST SATISFACT | | 30.00 | 0.00 | 6.45 | 36.45 |
| | 54013703 | 22-NOV-11 | WYNREWARDS CRDT | | (36.39) | 0.00 | 0.00 | (36.39) |
| | 54013639 | 22-NOV-11 | WYNREWARDS 5% | | 1059.30 | 0.00 | 222.99 | 1282.29 |
| | TC0256236 | 28-NOV-11 | T/A COMM SERVIC | | 16.43 | 0.00 | 3.39 | 19.82 |
| | 1256236 | 28-NOV-11 | GDS & INTERNET | | 214.00 | 0.00 | 44.43 | 258.43 |
| | TA0256236 | 28-NOV-11 | T/A COMMISSIONS | | 92.13 | 0.00 | 19.13 | 111.26 |
| | TM0256236 | 28-NOV-11 | MEMBER BENEFIT | | 126.76 | 0.00 | 26.26 | 153.02 |
| | TR0256236 | 28-NOV-11 | TMC / CONSORTIA | | 18.43 | 0.00 | 3.86 | 22.29 |
| | 41968982 | 30-NOV-11 | 5715A-HughesNet | | 160.00 | 8.00 | 34.66 | 202.66 |
| | 41985104 | 30-NOV-11 | Actual-1217A-MI | | 1112.97 | 0.00 | 229.80 | 1342.77 |
| | 41966896 | 30-NOV-11 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 59.17 | 345.80 |
| | 41986655 | 30-NOV-11 | Actual-1000A-RO | | 3338.92 | 0.00 | 689.44 | 4028.36 |
| | | | | | Sub Total | 6405.53 | 21.65 | 1339.58 | 7766.76 |
| DEC-2011 | 10586808 | 21-DEC-11 | GUEST SATISFACT | | 40.00 | 0.00 | 7.84 | 47.84 |
| | 54014087 | 22-DEC-11 | WYNREWARDS CRDT | | (232.09) | 0.00 | 0.00 | (232.09) |
| | 54014415 | 22-DEC-11 | WYNREWARDS 5% | | 396.08 | 0.00 | 77.43 | 473.51 |
| | TA0262354 | 28-DEC-11 | T/A COMMISSIONS | | 19.31 | 0.00 | 3.72 | 23.03 |
| | TM0262354 | 28-DEC-11 | MEMBER BENEFIT | | 90.80 | 0.00 | 17.49 | 108.29 |
| | 1262354 | 28-DEC-11 | GDS & INTERNET | | 41.60 | 0.00 | 7.96 | 49.56 |
| | TC0262354 | 28-DEC-11 | T/A COMM SERVIC | | 8.32 | 0.00 | 1.59 | 9.91 |
| | TR0262354 | 28-DEC-11 | TMC / CONSORTIA | | 2.21 | 0.00 | 0.38 | 2.59 |
| | 41998643 | 31-DEC-11 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 54.73 | 341.36 |
| | 42016368 | 31-DEC-11 | Actual-1000A-RO | | 3546.69 | 0.00 | 677.39 | 4224.08 |
| | 42000411 | 31-DEC-11 | 5715A-HughesNet | | 160.00 | 8.00 | 32.06 | 200.06 |
| | 42017653 | 31-DEC-11 | Actual-1217A-MI | | 1182.23 | 0.00 | 225.76 | 1407.99 |
| | | | | | Sub Total | 5528.13 | 21.65 | 1106.35 | 6656.13 |

Report Date : 04-MAR-13

ITEMIZED STATEMENT
-----------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     04-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| JAN-2012 | 54014796 | 22-JAN-12 | WYNREWARDS 5% | | 453.70 | 0.00 | 81.67 | 535.37 |
| | 54014571 | 22-JAN-12 | WYNREWARDS CRDT | | (38.61) | 0.00 | 0.00 | (38.61) |
| | TM0268693 | 27-JAN-12 | MEMBER BENEFIT | | 359.04 | 0.00 | 63.78 | 422.82 |
| | TC0268693 | 27-JAN-12 | T/A COMM SERVIC | | 29.79 | 0.00 | 5.29 | 35.08 |
| | TA0268693 | 27-JAN-12 | T/A COMMISSIONS | | 31.38 | 0.00 | 5.59 | 36.97 |
| | 1268693 | 27-JAN-12 | GDS & INTERNET | | 140.65 | 0.00 | 24.97 | 165.62 |
| | 42049771 | 31-JAN-12 | Actual-1217A-MI | | 1064.60 | 0.00 | 186.83 | 1251.43 |
| | 42047501 | 31-JAN-12 | Actual-1000A-RO | | 3193.81 | 0.00 | 560.50 | 3754.31 |
| | 42031562 | 31-JAN-12 | 5715A-HughesNet | | 160.00 | 8.00 | 29.46 | 197.46 |
| | 42030064 | 31-JAN-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 50.29 | 336.92 |
| | | | Sub Total | | 5667.34 | 21.65 | 1008.38 | 6697.37 |
| FEB-2012 | 30664030 | 13-FEB-12 | JUN 2011 NT AUD | | 279.90 | 0.00 | 47.32 | 327.22 |
| | 30664009 | 13-FEB-12 | JUN 2011 NT AUD | | 839.71 | 0.00 | 141.96 | 981.67 |
| | 54015443 | 22-FEB-12 | WYNREWARDS CRDT | | (30.93) | 0.00 | 0.00 | (30.93) |
| | 54015415 | 22-FEB-12 | WYNREWARDS 5% | | 369.05 | 0.00 | 60.72 | 429.77 |
| | TM0275192 | 24-FEB-12 | MEMBER BENEFIT | | 58.00 | 0.00 | 9.49 | 67.49 |
| | TC0275192 | 24-FEB-12 | T/A COMM SERVIC | | 7.81 | 0.00 | 1.28 | 9.09 |
| | TR0275192 | 24-FEB-12 | TMC / CONSORTIA | | 13.82 | 0.00 | 2.25 | 16.07 |
| | TA0275192 | 24-FEB-12 | T/A COMMISSIONS | | 41.34 | 0.00 | 6.75 | 48.09 |
| | 1275192 | 24-FEB-12 | GDS & INTERNET | | 52.50 | 0.00 | 8.57 | 61.07 |
| | 42061148 | 29-FEB-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 46.13 | 332.76 |
| | 42076883 | 29-FEB-12 | Actual-1000A-RO | | 3507.76 | 0.00 | 564.76 | 4072.52 |
| | 42077437 | 29-FEB-12 | Actual-1217A-MI | | 1169.25 | 0.00 | 188.23 | 1357.48 |
| | 42063315 | 29-FEB-12 | 5715A-HughesNet | | 160.00 | 8.00 | 27.02 | 195.02 |
| | | | Sub Total | | 6741.19 | 21.65 | 1104.48 | 7867.32 |

| MAR-2012 | 30670551 | 08-MAR-12 | ACH022112 | 100.00 | 0.00 | 15.70 | 115.70 |
| | 54015681 | 22-MAR-12 | WYNREWARDS 5% | 676.39 | 0.00 | 101.45 | 777.84 |
| | 54016078 | 22-MAR-12 | WYNREWARDS CRDT | (71.53) | 0.00 | 0.00 | (71.53) |
| | 42094789 | 31-MAR-12 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 41.69 | 328.32 |
| | 42093903 | 31-MAR-12 | 5715A-HughesNet | 160.00 | 8.00 | 24.42 | 192.42 |
| | 42110853 | 31-MAR-12 | Actual-1000A-RO | 4446.60 | 0.00 | 646.07 | 5092.67 |

Page 4 of 9

Report Date : 04-MAR-13

ITEMIZED STATEMENT
-------------------

Customer No :  29673-79897-01-MTL
Address    :   131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:    04-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----|-------|-------|
| | 42111612 | 31-MAR-12 | Actual-1217A-Mi | | 1482.20 | 0.00 | 215.33 | 1697.53 |
| | | | | Sub Total | 7066.64 | 21.65 | 1044.66 | 8132.95 |
| APR-2012 | TC0281396 | 09-APR-12 | T/A COMM SERVIC | | 8.15 | 0.00 | 1.16 | 9.31 |
| | TR0281396 | 09-APR-12 | TMC / CONSORTIA | | 98.72 | 0.00 | 13.92 | 112.64 |
| | 1281396 | 09-APR-12 | GDS & INTERNET | | 69.35 | 0.00 | 9.75 | 79.10 |
| | TA0281396 | 09-APR-12 | T/A COMMISSIONS | | 52.60 | 0.00 | 7.45 | 60.05 |
| | TM0281396 | 09-APR-12 | MEMBER BENEFIT | | 56.00 | 0.00 | 7.91 | 63.91 |
| | 54016386 | 22-APR-12 | WYNREWARDS CRDT | | (32.75) | 0.00 | 0.00 | (32.75) |
| | 54016106 | 22-APR-12 | WYNREWARDS 5% | | 590.12 | 0.00 | 79.38 | 669.50 |
| | TA0287797 | 25-APR-12 | T/A COMMISSIONS | | 67.38 | 0.00 | 8.94 | 76.32 |
| | 1287797 | 25-APR-12 | GDS & INTERNET | | 57.45 | 0.00 | 7.63 | 65.08 |
| | TM0287797 | 25-APR-12 | MEMBER BENEFIT | | 76.80 | 0.00 | 10.21 | 87.01 |
| | TR0287797 | 25-APR-12 | TMC / CONSORTIA | | 2.16 | 0.00 | 0.26 | 2.42 |
| | TC0287797 | 25-APR-12 | T/A COMM SERVIC | | 10.81 | 0.00 | 1.44 | 12.25 |
| | 42132740 | 30-APR-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 37.39 | 324.02 |
| | 42137927 | 30-APR-12 | Actual-1217A-Mi | | 1159.06 | 0.00 | 151.29 | 1310.35 |

```
        42134112    30-APR-12    5715A-HughesNet         160.00       8.00        21.90         189.90
        42140550    30 APR-12    Actual-1000A-RO        5477.18       0.00       453.78        3930.96

                                 Sub Total              6126.01      21.65       812.41        6960.07
                                                       ========     =======     ========       ========

MAY-2012  42173737   31-MAY-12   Actual-1000A-RO        3000.00       0.00       345.00        3345.00

                                 Sub Total              3000.00       0.00       345.00        3345.00
                                                       ========     =======     ========       ========

JUN-2012  42199314   30-JUN-12   Actual-1000A-RO        4019.60       0.00       401.94        4421.54

                                 Sub Total              4019.60       0.00       401.94        4421.54
                                                       ========     =======     ========       ========
```

Page 5 of 9

Report Date : 04-MAR-13

ITEMIZED STATEMENT
------------------

```
Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     04-MAR-2013
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|------------|----------------|-------|
| JUL-2012 | 54018089  | 22-JUL-12   | WYNREWARDS 5% | | 670.33 | 0.00 | 59.65 | 729.98 |
|          | TC0306802 | 25-JUL-12   | T/A COMM SERVIC | | 47.01 | 0.00 | 4.13 | 51.14 |
|          | TA0306802 | 25-JUL-12   | T/A COMMISSIONS | | 477.88 | 0.00 | 41.83 | 519.71 |
|          | 1306802   | 25-JUL-12   | GDS & INTERNET | | 164.30 | 0.00 | 14.38 | 178.68 |
|          | TM0306802 | 25-JUL-12   | MEMBER BENEFIT | | 140.40 | 0.00 | 12.30 | 152.70 |
|          | TR0306802 | 25-JUL-12   | TMC / CONSORTIA | | 148.30 | 0.00 | 12.97 | 161.27 |
|          | 42216579  | 30-JUL-12   | 5715A-HughesNet | | 160.00 | 8.00 | 14.27 | 182.27 |
|          | 42218251  | 30-JUL-12   | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 24.36 | 310.99 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 42235489 | 31-JUL-12 | Accrual-1217A-M | * | 1425.92 | 0.00 | 120.49 | 1546.41 |
| | 42233883 | 31-JUL-12 | Accrual-1000A-R | * | 4277.76 | 0.00 | 361.49 | 4639.25 |
| | | | Sub Total | | 7784.88 | 21.65 | 665.87 | 8472.40 |
| AUG-2012 | 54018687 | 22-AUG-12 | WYNREWARDS 5% | | 1009.33 | 0.00 | 74.17 | 1083.50 |
| | TC0313519 | 24-AUG-12 | T/A COMM SERVIC | | 2.22 | 0.00 | 0.14 | 2.36 |
| | TM0313519 | 24-AUG-12 | MEMBER BENEFIT | | 17.76 | 0.00 | 1.31 | 19.07 |
| | 42266885 | 31-AUG-12 | Accrual-1217A-M | * | 1525.48 | 0.00 | 105.24 | 1630.72 |
| | 42251516 | 31-AUG-12 | 5715A-HughesNet | | 160.00 | 8.00 | 11.58 | 179.58 |
| | 42264998 | 31-AUG-12 | Accrual-1000A-R | * | 4576.44 | 0.00 | 315.76 | 4892.20 |
| | 42252103 | 31-AUG-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 19.77 | 306.40 |
| | | | Sub Total | | 7564.21 | 21.65 | 527.97 | 8113.83 |
| SEP-2012 | 54019036 | 22-SEP-12 | WYNREWARDS 5% | | 1006.93 | 0.00 | 58.40 | 1065.33 |
| | 1319677 | 25-SEP-12 | GDS & INTERNET | | 28.25 | 0.00 | 1.60 | 29.85 |
| | TR0319677 | 25-SEP-12 | TMC / CONSORTIA | | 5.32 | 0.00 | 0.30 | 5.62 |
| | TC0319677 | 25-SEP-12 | T/A COMM SERVIC | | 2.27 | 0.00 | 0.13 | 2.40 |
| | TA0319677 | 25-SEP-12 | T/A COMMISSIONS | | 30.20 | 0.00 | 1.71 | 31.91 |
| | 42295057 | 30-SEP-12 | Accrual-1000A-R | * | 3195.06 | 0.00 | 172.53 | 3367.59 |
| | 42277908 | 30-SEP-12 | 5715A-HughesNet | | 160.00 | 8.00 | 9.06 | 177.06 |
| | 42296403 | 30-SEP-12 | Accrual-1217A-M | * | 1065.02 | 0.00 | 57.52 | 1122.54 |
| | 42277758 | 30-SEP-12 | 5096A-SOFTHOTEL | | 272.97 | 13.65 | 15.47 | 302.09 |

Report Date : 04-MAR-13

ITEMIZED STATEMENT
-------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     04-MAR-2013

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3855740337                3/4/2013

| Mon Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 5766.02 | 21.65 | 316.72 | 6104.39 |
| OCT-2012 | 30724947 | 02-OCT-12 | ONLINE LRNG LIB | | 50.00 | 0.00 | 2.66 | 52.66 |
| | 54019647 | 22-OCT-12 | WYNREWARDS 5% | | 457.13 | 0.00 | 19.67 | 476.80 |
| | TA0326484 | 28-OCT-12 | T/A COMMISSIONS | | 6.30 | 0.00 | 0.26 | 6.56 |
| | TC0326484 | 28-OCT-12 | T/A COMM SERVIC | | 3.35 | 0.00 | 0.13 | 3.48 |
| | TM0326484 | 28-OCT-12 | MEMBER BENEFIT | | 38.40 | 0.00 | 1.55 | 39.95 |
| | 1326484 | 28-OCT-12 | GDS & INTERNET | | 10.90 | 0.00 | 0.44 | 11.34 |
| | 42327555 | 31-OCT-12 | Accrual-1217A-M | * | 972.84 | 0.00 | 37.46 | 1010.30 |
| | 42326338 | 31-OCT-12 | Accrual-1000A-R | * | 2918.52 | 0.00 | 112.37 | 3030.89 |
| | 42310839 | 31-OCT-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 11.03 | 297.66 |
| | 42309313 | 31-OCT-12 | 5715A-HughesNet | | 160.00 | 8.00 | 6.46 | 174.46 |
| | | | | Sub Total | 4890.42 | 21.65 | 192.03 | 5104.10 |
| NOV-2012 | 1333040 | 19-NOV-12 | GDS & INTERNET | | 4.95 | 0.00 | 0.15 | 5.10 |
| | 54019979 | 22-NOV-12 | WYNREWARDS 5% | | 502.73 | 0.00 | 13.82 | 516.55 |
| | TM0339649 | 26-NOV-12 | MEMBER BENEFIT | | 11.84 | 0.00 | 0.30 | 12.14 |
| | 42355920 | 30-NOV-12 | Accrual-1000A-R | * | 2432.58 | 0.00 | 57.16 | 2489.74 |
| | 42356378 | 30-NOV-12 | Accrual-1217A-M | * | 810.86 | 0.00 | 19.06 | 829.92 |
| | 42342023 | 30-NOV-12 | 5715A-HughesNet | | 160.00 | 8.00 | 3.94 | 171.94 |
| | 42342548 | 30-NOV-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 6.73 | 293.36 |
| | | | | Sub Total | 4195.94 | 21.65 | 101.16 | 4318.75 |
| DEC-2012 | 54020781 | 22-DEC-12 | WYNREWARDS 5% | | 332.38 | 0.00 | 4.15 | 336.53 |
| | 42371585 | 31-DEC-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 2.29 | 288.92 |
| | 42390176 | 31-DEC-12 | Accrual-1217A-M | * | 794.48 | 0.00 | 6.36 | 800.84 |
| | 42388032 | 31-DEC-12 | Accrual-1000A-R | * | 2383.44 | 0.00 | 19.07 | 2402.51 |
| | 42371715 | 31-DEC-12 | 5715A-HughesNet | | 160.00 | 8.00 | 1.34 | 169.34 |

Report Date : 04-MAR-13

ITEMIZED STATEMENT
-------------------

```
Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     04-MAR-2013
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 3943.28 | 21.65 | 33.21 | 3998.14 |
| JAN-2013 | 54021636 | 22-JAN-13 | WYNREWARDS 5% | | 448.04 | 0.00 | 0.00 | 448.04 |
| | 10657280 | 30-JAN-13 | GUEST SATISFACT | | 408.00 | 0.00 | 0.00 | 408.00 |
| | 42416296 | 31-JAN-13 | Accrual-1000A-R | · | 2547.90 | 0.00 | 0.00 | 2547.90 |
| | 42406957 | 31-JAN-13 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 0.00 | 286.63 |
| | 42406639 | 31-JAN-13 | 5715A-HughesNet | | 160.00 | 8.00 | 0.00 | 168.00 |
| | 42418397 | 31-JAN-13 | Accrual-1217A-M | · | 849.30 | 0.00 | 0.00 | 849.30 |
| | | | | Sub Total | 4686.22 | 21.65 | 0.00 | 4707.87 |
| FEB-2013 | 54021842 | 22-FEB-13 | WYNREWARDS 5% | | 403.69 | 0.00 | 0.00 | 403.69 |
| | TCO358732 | 25-FEB-13 | T/A COMM SERVIC | | 30.09 | 0.00 | 0.00 | 30.09 |
| | TA0358732 | 25-FEB-13 | T/A COMMISSIONS | | 401.20 | 0.00 | 0.00 | 401.20 |
| | 42432255 | 28-FEB-13 | 5096A-WYNGUEST | | 272.98 | 13.65 | 0.00 | 286.63 |
| | 42452346 | 28-FEB-13 | Accrual-1217A-M | · | 790.96 | 0.00 | 0.00 | 790.96 |
| | 42452344 | 28-FEB-13 | Accrual-1000A-R | · | 2372.88 | 0.00 | 0.00 | 2372.88 |
| | 42434493 | 28-FEB-13 | 5715A-HughesNet | | 160.00 | 8.00 | 0.00 | 168.00 |
| | | | | Sub Total | 4431.80 | 21.65 | 0.00 | 4453.45 |
| | | | | Grand Total | 110759.88 | 346.23 | 14364.07 | 125470.18 |

Requested By: Jerilyn Marino

Page 8 of 9

Report Date : 04-MAR-13

ITEMIZED STATEMENT
-----------------------

· Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

······· END OF REPORT ·······

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

Transaction Date: 05 Mar 2013          Tracking Number:          1Z22445X0290998330

| 1 | Address Information |
|---|---|

Ship To:
V.A.L. ENTERPRISES, INC.
MR. JAYESH PATEL
321 NORTH CEDAR BLUFF ROAD
KNOXVILLE TN 379234507

Ship From:
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253

Return Address:
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253

| 2 | Package Information |
|---|---|

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

| 3 | UPS Shipping Service and Shipping Options |
|---|---|

| Service: | UPS 2nd Day Air |
|---|---|
| Guaranteed By: | End of Day Thursday, Mar 7, 2013 |
| Shipping Fees Subtotal: | **14.66 USD** |
| Transportation | 13.15 USD |
| Fuel Surcharge | 1.51 USD |

| 4 | Payment Information |
|---|---|

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| Total Charged: | 14.66 USD |
|---|---|
| Negotiated Total: | 5.70 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services
and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 05 Mar 2013                    **Tracking Number:**          1Z22445X0294045549

**1**  Address Information

| | | |
|---|---|---|
| **Ship To:** | **Ship From:** | **Return Address:** |
| V.A.L. ENTERPRISES, INC. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| CHHAYA PATEL/DINESH PATEL | Jerilyn Marino | Jerilyn Marino |
| 101 BROOKWOOD DRIVE | 22 Sylvan Way | 22 Sylvan Way |
| BRISTOL TN 376202806 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| Residential | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |

**2**  Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. Letter | UPS Letter | | Reference # 1 - 006-1696 |

**3**  UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Mar 7, 2013 |
| *Shipping Fees Subtotal:* | 18.23 USD |
|   Transportation | 13.15 USD |
|   Fuel Surcharge | 1.88 USD |
|   Residential Surcharge | 3.20 USD |

**4**  Payment Information

Bill Shipping Charges to:                        Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 18.23 USD |
| Negotiated Total: | 7.56 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 05 Mar 2013

**Tracking Number:** 1Z22445X0292800557

---

**1** Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Virginia Asset Financing Corp | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Virginia Asset Financing Corp | Jerilyn Marino | Jerilyn Marino |
| 4185 Chain Bridge Road | 22 Sylvan Way | 22 Sylvan Way |
| FAIRFAX VA 220304102 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |

---

**2** Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

---

**3** UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Mar 7, 2013 |
| Shipping Fees Subtotal: | **14.10 USD** |
|     Transportation | 12.65 USD |
|     Fuel Surcharge | 1.45 USD |

---

**4** Payment Information

Bill Shipping Charges to:      Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 14.10 USD |
| Negotiated Total: | 5.70 USD |

**Note:** Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT G



# WYNDHAM

**HOTEL GROUP**
Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • Fax (800) 880-9445
www.wyndhamworldwide.com

March 22, 2013

**VIA 2 DAY DELIVERY METHOD**

Mr. Jayesh Patel
V.A.L. Enterprises, Inc.
521 N. Cedar Bluff Road
Knoxville, TN 37923

**Re:** **NOTICE OF TERMINATION** of License Agreement, dated April 5, 2000, (the "Agreement") between V.A.L. Enterprises, Inc., ("you" or "your") and Microtel Inns and Suites Franchising, Inc., ("we", "our" or "us") for the Microtel Inns and Suites by Wyndham® System Unit #29673-79897-01 located in Bristol, VA (the "Facility")

Dear Mr. Patel:

We write to give you formal notice of the termination of the License granted under the Agreement to operate the Facility as part of the Microtel Inns and Suites by Wyndham System (the "Notice"). This termination is a result of your failure to cure your default under the Agreement, due to your failure to meet your financial obligations. The termination of your Agreement is effective as of the date of this Notice (the "Termination Date").

Because the Agreement has terminated, you must now perform your post-termination obligations such as the removal of all items that display or refer to the Microtel Inns and Suites by Wyndham brand at the Facility. The de-identification procedures are specified in the attachment to this letter. These de-identification procedures must be completed within ten (10) days from the Termination Date.

You must also immediately pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. We estimate that, as of the date of this Notice, you owe us $126,930.02 in Recurring Fees. This amount is described in more detail in the attached itemized statement. Additionally, you must pay us Liquidated Damages of $40,790.79 as specified in Section 10.D(2) of the Agreement.

If within the ten (10) day period described above, you do not timely remove the exterior signage which bears the Microtel Inns and Suites by Wyndham name and marks, we may exercise our rights under the Agreement and send an independent contractor to the Facility to remove all such signage at and around the Facility. The cost of sign removal will be added to your final invoice from us. If you object to the removal of the signage by our independent contractor, you must notify us within ten (10) days of the date of this Notice.

# WYNDHAM

HOTEL GROUP



      

        

Mr. Jayesh Patel
March 8, 2013
Page Two

If you do not timely complete each of these post-termination obligations, we will refer this matter to our legal department to ensure that we recover from you all amounts owed and that all of your post-termination obligations to us are performed.

This Notice does not modify, replace or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. Please consider this letter to be a notice and demand for payment under any Guaranty of the Agreement, directed to your Guarantors.

If you have any questions regarding your obligations under this letter, please contact Larry Geer, Senior Director of Settlements, at (973) 753-7131.

Sincerely,

Suzanne Fenimore
Senior Director
Contracts Compliance

Enclosure

cc:  Chhaya Patel ~ 101 Brookwood Drive, Bristol, TN 37620 (Guarantor)
     Dinesh Patel ~ 101 Brookwood Drive, Bristol, TN 37620 (Guarantor)
     Virginia Asset Financing Corp and U.S. Small Business Administration (Lender) ~ 4165 Chain Bridge Road, Fairfax, VA 22030 (VIA CERTIFIED MAIL)
     Patrick Breen
     Aly El-Bassuni
     Larry Geer

Report Date : 22-MAR-13

ITEMIZED STATEMENT
------------------

```
As of Date (DD-MMM-YYYY):  22-MAR-2013
Customer No             :  29673-79897-01-MTL
Category Set            :
Category Group          :
Group No                :
Bankruptcy              :  No Bankruptcy Sites
Disputed                :  No
Finance Charges Included:  Yes
```

Page 1 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
--------------------

Customer No : 29673-79897-01-MTL
Address :    131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:  22-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| AUG-2011 | 10557544 | 11-AUG-11 | GUEST SATISFACT | | 10.00 | 0.00 | 6.20 | 16.20 |
| | 41889777 | 31-AUG-11 | Actual-1000A-RO | | 6156.24 | 0.00 | 1541.48 | 7697.72 |
| | 30612385 | 31-AUG-11 | HughesNet VSAT | | 9.52 | 0.48 | 0.00 | 10.00 |
| | | | Sub Total | | 6175.76 | 0.48 | 1547.68 | 7723.92 |
| SEP-2011 | 30623757 | 15-SEP-11 | ONLINE LRNG LIB | | 50.00 | 0.00 | 12.93 | 62.93 |
| | 54012677 | 22-SEP-11 | WYNREWARDS CRDT | | (75.18) | 0.00 | 0.00 | (75.18) |
| | 54012455 | 22-SEP-11 | WYNREWARDS 5% | | 1161.06 | 0.00 | 296.12 | 1457.18 |
| | 1242985 | 29-SEP-11 | GDS & INTERNET | | 235.10 | 0.00 | 58.96 | 294.06 |
| | TA0242985 | 29-SEP-11 | T/A COMMISSIONS | | 679.64 | 0.00 | 170.86 | 850.50 |
| | TR0242985 | 29-SEP-11 | TMC / CONSORTIA | | 221.37 | 0.00 | 55.51 | 276.88 |
| | TC0242985 | 29-SEP-11 | T/A COMM SERVIC | | 74.23 | 0.00 | 18.65 | 92.88 |
| | TM0242985 | 29-SEP-11 | MEMBER BENEFIT | | 310.14 | 0.00 | 78.02 | 388.16 |
| | 41912350 | 30-SEP-11 | 5096A-SOFTHOTEL | | 259.98 | 13.00 | 68.48 | 341.46 |
| | 41924222 | 30-SEP-11 | Actual-1217A-MI | | 1400.54 | 0.00 | 351.56 | 1752.10 |
| | 41922390 | 30-SEP-11 | Actual-1000A-RO | | 4201.62 | 0.00 | 1054.62 | 5256.24 |
| | 30633844 | 30-SEP-11 | HughesNet VSAT | | 160.00 | 8.00 | 42.13 | 210.13 |
| | | | Sub Total | | 8678.50 | 21.00 | 2207.84 | 10907.34 |
| OCT-2011 | 54013037 | 22-OCT-11 | WYNREWARDS 5% | | 776.22 | 0.00 | 186.27 | 962.49 |
| | 54013360 | 22-OCT-11 | WYNREWARDS CRDT | | (40.50) | 0.00 | 0.00 | (40.50) |
| | TM0249665 | 27-OCT-11 | MEMBER BENEFIT | | 182.80 | 0.00 | 43.38 | 226.18 |
| | TR0249665 | 27-OCT-11 | TMC / CONSORTIA | | 2.33 | 0.00 | 0.56 | 2.89 |
| | TA0249665 | 27-OCT-11 | T/A COMMISSIONS | | 246.45 | 0.00 | 58.54 | 304.99 |
| | 1249665 | 27-OCT-11 | GDS & INTERNET | | 225.20 | 0.00 | 53.49 | 278.69 |
| | TC0249665 | 27-OCT-11 | T/A COMM SERVIC | | 32.21 | 0.00 | 7.65 | 39.86 |
| | 30641346 | 31-OCT-11 | ACH102511 | | 100.00 | 0.00 | 23.55 | 123.55 |
| | 41955321 | 31-OCT-11 | Actual-1217A-MI | | 1532.68 | 0.00 | 360.98 | 1893.66 |
| | 41953073 | 31-OCT-11 | Actual-1000A-RO | | 4598.04 | 0.00 | 1082.84 | 5680.88 |
| | 41939370 | 31-OCT-11 | 571-A-HughesNet | | 160.00 | 8.00 | 39.53 | 207.53 |
| | 41938929 | 31-OCT-11 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 67.48 | 354.11 |

Page 2 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
- - - - - - - - - - - - - - - -

```
Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     22-MAR-2013
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|  |  |  | Sub Total |  | 8088.41 | 21.65 | 1924.27 | 10034.33 |
| NOV-2013 | 10581872 | 16-NOV-11 | GUEST SATISFACT |  | 30.00 | 0.00 | 6.87 | 36.87 |
|  | 54013639 | 22-NOV-11 | WYNREWARDS 5% |  | 1059.30 | 0.00 | 237.82 | 1297.12 |
|  | 54013703 | 22-NOV-11 | WYNREWARDS CRDT |  | (36.39) | 0.00 | 0.00 | (36.39) |
|  | TC0256236 | 28-NOV-11 | T/A COMM SERVIC |  | 16.43 | 0.00 | 3.62 | 20.05 |
|  | TM0256236 | 28-NOV-11 | MEMBER BENEFIT |  | 126.76 | 0.00 | 28.03 | 154.79 |
|  | 1256236 | 28-NOV-11 | GDS & INTERNET |  | 214.00 | 0.00 | 47.43 | 261.43 |
|  | TR0256236 | 28-NOV-11 | TMC / CONSORTIA |  | 18.43 | 0.00 | 4.11 | 22.54 |
|  | TA0256236 | 28-NOV-11 | T/A COMMISSIONS |  | 92.13 | 0.00 | 20.42 | 112.55 |
|  | 41985104 | 30-NOV-11 | Actual-1217A-MI |  | 1112.97 | 0.00 | 245.38 | 1358.35 |
|  | 41966896 | 30-NOV-11 | 5096A-SOFTHOTEL |  | 272.98 | 13.65 | 63.18 | 349.81 |
|  | 41968982 | 30-NOV-11 | 5715A-HughesNet |  | 160.00 | 8.00 | 37.01 | 205.01 |
|  | 41986655 | 30-NOV-11 | Actual-1000A-RO |  | 3338.92 | 0.00 | 736.18 | 4075.10 |
|  |  |  | Sub Total |  | 6405.53 | 21.65 | 1430.05 | 7857.23 |
| DEC-2011 | 10586808 | 21-DEC-11 | GUEST SATISFACT |  | 40.00 | 0.00 | 8.40 | 48.40 |
|  | 54014087 | 22-DEC-11 | WYNREWARDS CRDT |  | (232.09) | 0.00 | 0.00 | (232.09) |
|  | 54014415 | 22-DEC-11 | WYNREWARDS 5% |  | 396.08 | 0.00 | 82.98 | 479.06 |
|  | 1262354 | 28-DEC-11 | GDS & INTERNET |  | 41.60 | 0.00 | 8.54 | 50.14 |
|  | TR0262354 | 28-DEC-11 | TMC / CONSORTIA |  | 2.21 | 0.00 | 0.41 | 2.62 |
|  | TA0262354 | 28-DEC-11 | T/A COMMISSIONS |  | 19.31 | 0.00 | 3.99 | 23.30 |
|  | TC0262354 | 28-DEC-11 | T/A COMM SERVIC |  | 8.32 | 0.00 | 1.70 | 10.02 |
|  | TM0262354 | 28-DEC-11 | MEMBER BENEFIT |  | 90.80 | 0.00 | 18.76 | 109.56 |
|  | 42000411 | 31-DEC-11 | 5715A-HughesNet |  | 160.00 | 8.00 | 34.41 | 202.41 |
|  | 42017653 | 31-DEC-11 | Actual-1217A-MI |  | 1182.23 | 0.00 | 242.31 | 1424.54 |
|  | 41998643 | 31-DEC-11 | 5096A-SOFTHOTEL |  | 272.98 | 13.65 | 58.74 | 345.37 |
|  | 42016368 | 31-DEC-11 | Actual-1000A-RO |  | 3546.69 | 0.00 | 727.04 | 4273.73 |
|  |  |  | Sub Total |  | 5528.13 | 21.65 | 1187.28 | 6737.06 |

Report Date : 22-MAR-13

ITEMIZED STATEMENT
--------------------

Customer No : 29673-79897-01-MTL
Address :     131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:   22-MAR-2013

| Mon-Year | Invoice NO | Invoice Date | Description  Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|----------------------|---------|------------|----------------|-------|
| JAN-2012 | 54014796 | 22-JAN-12 | WYNREWARDS 5% | 453.70 | 0.00 | 88.02 | 541.72 |
|          | 54014571 | 22-JAN-12 | WYNREWARDS CRDT | (38.61) | 0.00 | 0.00 | (38.61) |
|          | TA0268693 | 27-JAN-12 | T/A COMMISSIONS | 31.38 | 0.00 | 6.03 | 37.41 |
|          | TM0268693 | 27-JAN-12 | MEMBER BENEFIT | 359.04 | 0.00 | 68.81 | 427.85 |
|          | 1268693 | 27-JAN-12 | GDS & INTERNET | 140.65 | 0.00 | 26.94 | 167.59 |
|          | TC0268693 | 27-JAN-12 | T/A COMM SERVIC | 29.79 | 0.00 | 5.71 | 35.50 |
|          | 42031562 | 31-JAN-12 | 5715A-HughesNet | 160.00 | 8.00 | 31.81 | 199.81 |
|          | 42049771 | 31-JAN-12 | Actual-1217A-MI | 1064.60 | 0.00 | 201.73 | 1266.33 |
|          | 42030064 | 31-JAN-12 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 54.30 | 340.93 |
|          | 42047501 | 31-JAN-12 | Actual-1000A-RO | 3193.81 | 0.00 | 605.21 | 3799.02 |
|          |          |          | **Sub Total** | 5667.34 | 21.65 | 1088.56 | 6777.55 |
| FEB-2012 | 30664030 | 13-FEB-12 | JUN 2011 NT AUD | 279.90 | 0.00 | 51.24 | 331.14 |
|          | 30664009 | 13-FEB-12 | JUN 2011 NT AUD | 839.71 | 0.00 | 153.72 | 993.43 |
|          | 54015415 | 22-FEB-12 | WYNREWARDS 5% | 369.05 | 0.00 | 65.89 | 434.94 |
|          | 54015443 | 22-FEB-12 | WYNREWARDS CRDT | (30.93) | 0.00 | 0.00 | (30.93) |
|          | TC0275192 | 24-FEB-12 | T/A COMM SERVIC | 7.81 | 0.00 | 1.39 | 9.20 |
|          | TM0275192 | 24-FEB-12 | MEMBER BENEFIT | 58.00 | 0.00 | 10.30 | 68.30 |
|          | TR0275192 | 24-FEB-12 | TMC / CONSORTIA | 13.82 | 0.00 | 2.44 | 16.26 |
|          | TA0275192 | 24-FEB-12 | T/A COMMISSIONS | 41.34 | 0.00 | 7.33 | 48.67 |
|          | 1275192 | 24-FEB-12 | GDS & INTERNET | 52.50 | 0.00 | 9.31 | 61.81 |
|          | 42077437 | 29-FEB-12 | Actual-1217A-MI | 1169.25 | 0.00 | 204.60 | 1373.85 |
|          | 42076883 | 29-FEB-12 | Actual-1000A-RO | 3507.76 | 0.00 | 613.87 | 4121.63 |
|          | 42061148 | 29-FEB-12 | 5096A-SOFTHOTEL | 272.98 | 13.65 | 50.14 | 336.77 |
|          | 42063315 | 29-FEB-12 | 5715A-HughesNet | 160.00 | 8.00 | 29.37 | 197.37 |
|          |          |          | **Sub Total** | 6741.19 | 21.65 | 1199.60 | 7962.44 |
| MAR-2012 | 30670551 | 08-MAR-12 | ACH022112 | 100.00 | 0.00 | 17.10 | 117.10 |
|          | 54016078 | 22-MAR-12 | WYNREWARDS CRDT | (71.53) | 0.00 | 0.00 | (71.53) |
|          | 54015681 | 22-MAR-12 | WYNREWARDS 5% | 676.39 | 0.00 | 110.92 | 787.31 |
|          | 42111612 | 31-MAR-12 | Actual-1217A-MI | 1482.20 | 0.00 | 236.08 | 1718.28 |
|          | 42110853 | 31-MAR-12 | Actual-1000A-RO | 4446.60 | 0.00 | 708.32 | 5154.92 |
|          | 42093903 | 31-MAR-12 | 5715A-HughesNet | 160.00 | 8.00 | 26.77 | 194.77 |

Page 4 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date :    22-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----|----------------|-------|
| | 42094789 | 31-MAR-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 45.70 | 332.33 |
| | | | Sub Total | | 7066.64 | 21.65 | 1144.89 | 8233.18 |
| APR-2012 | 1281396 | 09-APR-12 | GDS & INTERNET | | 69.35 | 0.00 | 10.72 | 80.07 |
| | TC0281396 | 09-APR-12 | T/A COMM SERVIC | | 8.15 | 0.00 | 1.27 | 9.42 |
| | TM0281396 | 09-APR-12 | MEMBER BENEFIT | | 56.00 | 0.00 | 8.69 | 64.69 |
| | TR0281396 | 09-APR-12 | TMC / CONSORTIA | | 98.72 | 0.00 | 15.30 | 114.02 |
| | TA0281396 | 09-APR-12 | T/A COMMISSIONS | | 52.60 | 0.00 | 8.19 | 60.79 |
| | 54016106 | 22-APR-12 | WYNREWARDS 5% | | 590.12 | 0.00 | 87.64 | 677.76 |
| | 54016386 | 22-APR-12 | WYNREWARDS CRDT | | (32.75) | 0.00 | 0.00 | (32.75) |
| | TR0287797 | 25-APR-12 | TMC / CONSORTIA | | 2.16 | 0.00 | 0.29 | 2.45 |
| | TC0287797 | 25-APR-12 | T/A COMM SERVIC | | 10.81 | 0.00 | 1.59 | 12.40 |
| | TA0287797 | 25-APR-12 | T/A COMMISSIONS | | 67.38 | 0.00 | 9.88 | 77.26 |
| | 1287797 | 25-APR-12 | GDS & INTERNET | | 57.45 | 0.00 | 8.43 | 65.88 |
| | TM0287797 | 25-APR-12 | MEMBER BENEFIT | | 76.80 | 0.00 | 11.29 | 88.09 |
| | 42137927 | 30-APR-12 | Actual-1217A-MI | | 1159.06 | 0.00 | 167.52 | 1326.58 |
| | 42132740 | 30-APR-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 41.40 | 328.03 |
| | 42140550 | 30-APR-12 | Actual-1000A-RO | | 3477.18 | 0.00 | 502.46 | 3979.64 |
| | 42134112 | 30-APR-12 | 5715A-HughesNet | | 160.00 | 8.00 | 24.25 | 192.25 |
| | | | Sub Total | | 6126.01 | 21.65 | 898.92 | 7046.58 |
| MAY-2012 | 42173737 | 31-MAY-12 | Actual-1000A-RO | | 3000.00 | 0.00 | 387.00 | 3387.00 |
| | | | Sub Total | | 3000.00 | 0.00 | 387.00 | 3387.00 |
| JUN-2012 | 42199314 | 30-JUN-12 | Actual-1000A-RO | | 4019.60 | 0.00 | 458.21 | 4477.81 |
| | | | Sub Total | | 4019.60 | 0.00 | 458.21 | 4477.81 |

Page 5 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
------------------------

Customer No :   29673-79897-01-MTL
Address :       131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:     22-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| JUL-2012 | 54018089 | 22-JUL-12 | WYNREWARDS 5% | | 670.33 | 0.00 | 69.03 | 739.36 |
| | 1306802 | 25-JUL-12 | GDS & INTERNET | | 164.30 | 0.00 | 16.68 | 180.98 |
| | TR0306802 | 25-JUL-12 | TMC / CONSORTIA | | 148.30 | 0.00 | 15.05 | 163.35 |
| | TA0306802 | 25-JUL-12 | T/A COMMISSIONS | | 477.88 | 0.00 | 48.52 | 526.40 |
| | TC0306802 | 25-JUL-12 | T/A COMM SERVIC | | 47.01 | 0.00 | 4.79 | 51.80 |
| | TM0306802 | 25-JUL-12 | MEMBER BENEFIT | | 140.40 | 0.00 | 14.27 | 154.67 |
| | 42216579 | 30-JUL-12 | 5715A-HughesNet | | 160.00 | 8.00 | 16.62 | 184.62 |
| | 42218251 | 30-JUL-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 28.37 | 315.00 |
| | 42233883 | 31-JUL-12 | Accrual-1000A-R | * | 4277.76 | 0.00 | 421.38 | 4699.14 |
| | 42235489 | 31-JUL-12 | Accrual-1217A-M | * | 1425.92 | 0.00 | 140.45 | 1566.37 |
| | | | Sub Total | | 7784.88 | 21.65 | 775.16 | 8581.69 |
| AUG-2012 | 54018687 | 22-AUG-12 | WYNREWARDS 5% | | 1009.33 | 0.00 | 88.30 | 1097.63 |
| | TM0313519 | 24-AUG-12 | MEMBER BENEFIT | | 17.76 | 0.00 | 1.56 | 19.32 |
| | TC0313519 | 24-AUG-12 | T/A COMM SERVIC | | 2.22 | 0.00 | 0.17 | 2.39 |
| | 42266885 | 31-AUG-12 | Accrual-1217A-M | * | 1525.48 | 0.00 | 126.60 | 3652.08 |
| | 42251516 | 31-AUG-12 | 5715A-HughesNet | | 160.00 | 8.00 | 13.93 | 181.93 |
| | 42264998 | 31-AUG-12 | Accrual-1000A-R | * | 4576.44 | 0.00 | 379.83 | 4956.27 |
| | 42252103 | 31-AUG-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 23.78 | 310.41 |
| | | | Sub Total | | 7564.21 | 21.65 | 634.17 | 8220.03 |
| SEP-2012 | 54019036 | 22-SEP-12 | WYNREWARDS 5% | | 1006.93 | 0.00 | 72.50 | 1079.43 |
| | TA0319677 | 25-SEP-12 | T/A COMMISSIONS | | 30.20 | 0.00 | 2.13 | 32.33 |
| | TR0319677 | 25-SEP-12 | TMC / CONSORTIA | | 5.32 | 0.00 | 0.37 | 5.69 |
| | TC0319677 | 25-SEP-12 | T/A COMM SERVIC | | 2.27 | 0.00 | 0.16 | 2.43 |
| | 1319677 | 25-SEP-12 | GDS & INTERNET | | 28.25 | 0.00 | 2.00 | 30.25 |
| | 42277908 | 30-SEP-12 | 5715A-HughesNet | | 160.00 | 8.00 | 11.41 | 179.41 |
| | 42277758 | 30-SEP-12 | 5096A-SOFTHOTEL | | 272.97 | 13.65 | 19.48 | 306.10 |
| | 42296403 | 30-SEP-12 | Accrual-1217A-M | * | 1065.02 | 0.00 | 72.43 | 1137.45 |
| | 42295057 | 30-SEP-12 | Accrual-1000A-R | * | 3195.06 | 0.00 | 217.26 | 3412.32 |

Report Date : 22-MAR-13

ITEMIZED STATEMENT
------------------------

Customer No :  29673-79897-01-MTL
Address :      131 Bristol East Road,BRISTOL,VA,24202,US
As of Date :   22-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | Sub Total | | 5766.02 | 21.65 | 397.74 | 6185.41 |
| OCT-2012 | 30724947 | 02-OCT-12 | ONLINE LRNG LIB | | 50.00 | 0.00 | 3.36 | 53.36 |
| | 54019647 | 22-OCT-12 | WYNREWARDS 5% | | 457.13 | 0.00 | 26.07 | 483.20 |
| | 1326484 | 28-OCT-12 | GDS & INTERNET | | 10.90 | 0.00 | 0.59 | 11.49 |
| | TM0326484 | 28-OCT-12 | MEMBER BENEFIT | | 38.40 | 0.00 | 2.09 | 40.49 |
| | TA0326484 | 28-OCT-12 | T/A COMMISSIONS | | 6.30 | 0.00 | 0.35 | 6.65 |
| | TC0326484 | 28-OCT-12 | T/A COMM SERVIC | | 3.35 | 0.00 | 0.18 | 3.53 |
| | 42309313 | 31-OCT-12 | 5715A-HughesNet | | 160.00 | 8.00 | 8.81 | 176.81 |
| | 42310839 | 31-OCT-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 15.04 | 301.67 |
| | 42327555 | 31-OCT-12 | Accrual-1217A-M | * | 972.84 | 0.00 | 51.08 | 1023.92 |
| | 42326338 | 31-OCT-12 | Accrual-1000A-R | * | 2918.52 | 0.00 | 153.23 | 3071.75 |
| | | | Sub Total | | 4890.42 | 21.65 | 260.80 | 5172.87 |
| NOV-2012 | 1333040 | 19-NOV-12 | GDS & INTERNET | | 4.95 | 0.00 | 0.22 | 5.17 |
| | 54019979 | 22-NOV-12 | WYNREWARDS 5% | | 502.73 | 0.00 | 20.86 | 523.59 |
| | TM0339649 | 26-NOV-12 | MEMBER BENEFIT | | 11.84 | 0.00 | 0.47 | 12.31 |
| | 42342548 | 30-NOV-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 10.74 | 297.37 |
| | 42355920 | 30-NOV-12 | Accrual-1000A-R | * | 2432.58 | 0.00 | 91.22 | 2523.80 |
| | 42356378 | 30-NOV-12 | Accrual-1217A-M | * | 810.86 | 0.00 | 30.41 | 841.27 |
| | 42342023 | 30-NOV-12 | 5715A-HughesNet | | 160.00 | 8.00 | 6.29 | 174.29 |
| | | | Sub Total | | 4195.94 | 21.65 | 160.21 | 4377.80 |
| DEC-2012 | 54020781 | 22-DEC-12 | WYNREWARDS 5% | | 332.38 | 0.00 | 8.80 | 341.18 |
| | 42371585 | 31-DEC-12 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 6.30 | 292.93 |
| | 42371715 | 31-DEC-12 | 5715A-HughesNet | | 160.00 | 8.00 | 3.69 | 171.69 |
| | 42388032 | 31-DEC-12 | Accrual-1000A-R | * | 2383.44 | 0.00 | 52.44 | 2435.88 |
| | 42390176 | 31-DEC-12 | Accrual-1217A-M | * | 794.48 | 0.00 | 17.48 | 811.96 |

Page 7 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
--------------------

Customer No :  29673-79897-01-MTL
Address :     131 Bristol East Road,BRISTOL,VA,24202,US
As of Date:   22-MAR-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | | | | | | | | |
| | | | Sub Total | | 3943.28 | 21.65 | 88.71 | 4053.64 |
| | | | | | | | | |
| JAN-2013 | 54021636 | 22-JAN-13 | WYNREWARDS 5% | | 448.04 | 0.00 | 4.93 | 452.97 |
| | 10657280 | 30-JAN-13 | GUEST SATISFACT | | 408.00 | 0.00 | 2.86 | 410.86 |
| | 42416296 | 31-JAN-13 | Accrual-1000A-R | * | 2547.90 | 0.00 | 16.56 | 2564.46 |
| | 42418397 | 31-JAN-13 | Accrual-1217A-M | * | 849.30 | 0.00 | 5.52 | 854.82 |
| | 42406639 | 31-JAN-13 | 5715A-HughesNet | | 160.00 | 8.00 | 1.09 | 169.09 |
| | 42406957 | 31-JAN-13 | 5096A-SOFTHOTEL | | 272.98 | 13.65 | 1.86 | 288.49 |
| | | | | | | | | |
| | | | Sub Total | | 4686.22 | 21.65 | 32.82 | 4740.69 |
| | | | | | | | | |
| FEB-2013 | 54021842 | 22-FEB-13 | WYNREWARDS 5% | | 403.69 | 0.00 | 0.00 | 403.69 |
| | TA0358732 | 25-FEB-13 | T/A COMMISSIONS | | 401.20 | 0.00 | 0.00 | 401.20 |
| | TC0358732 | 25-FEB-13 | T/A COMM SERVIC | | 30.09 | 0.00 | 0.00 | 30.09 |
| | 42452346 | 28-FEB-13 | Accrual-1217A-M | * | 790.96 | 0.00 | 0.00 | 790.96 |
| | 42452344 | 28-FEB-13 | Accrual-1000A-R | * | 2372.88 | 0.00 | 0.00 | 2372.88 |
| | 42432255 | 28-FEB-13 | 5096A-WYNGUEST | | 272.98 | 13.65 | 0.00 | 286.63 |
| | 42434493 | 28-FEB-13 | 5715A-HughesNet | | 160.00 | 8.00 | 0.00 | 168.00 |
| | | | | | | | | |
| | | | Sub Total | | 4431.80 | 21.65 | 0.00 | 4453.45 |
| | | | | | | | | |
| | | | Grand Total | | 110759.88 | 346.23 | 15823.91 | 126930.02 |

Requested By: Brenda Melendez

Page 8 of 9

Report Date : 22-MAR-13

ITEMIZED STATEMENT
--------------------

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

****** END OF REPORT ******

## DE-IDENTIFICATION PROCEDURES

**You must complete each of the following within 10 days after the Termination Date:**

1.   Remove, replace or cover with an opaque cover the primary Facility signage.

2.   Remove all interior signage that contains Microtel Inns and Suites by Wyndham Marks.

3.   Change advertising billboards to remove Microtel Inns and Suites by Wyndham Marks.

4.   Stop answering Facility telephone as Microtel Inns and Suites by Wyndham guest lodging facility.

5.   Remove Microtel Inns and Suites by Wyndham name and Marks from any domain name, advertising and brochures.

6.   Return to us all confidential operations and training manuals.

7.   Remove the Microtel Inns and Suites by Wyndham name and Marks from the following items:

> Stationery, pads and pens
> Directories and brochures
> Business cards
> Folios and registration cards
> Do-not-disturb cards
> Comment cards
> Telephone plates
> Telephone dialing instructions
> TV channel ID plates
> Rate/law cards
> Door signage
> Soap/shampoo
> Key tags
> Credit card imprinter
> Laundry bags
> Name tags/uniforms
> Ice buckets/trays
> Ashtrays/matches
> Plaques
> Guest checks/receipts
> Menus

8.   Paint over or remove any distinctive   Microtel Inns and Suites by Wyndham trade dress, paint schemes or architectural features.

9.   It is prohibited to re-name the Facility with a confusingly similar name or color scheme as a Microtel Inns and Suites by Wyndham facility.

10.   Our quality assurance inspectors will visit the Facility at any time after 10 days after the Termination Date to verify that you have performed these de-identification obligations.

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 22 Mar 2013

**Tracking Number:** 1Z22445X0299287430

**1** Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Chhaya Patel | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| 101 Brookwood Drive | Brenda Melendez | Brenda Melendez |
| BRISTOL TN 376202806 | 22 Sylvan Way | 22 Sylvan Way |
| Residential | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:9737538950 | Telephone:9737538950 |

**2** Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

**3** UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Tuesday, Mar 26, 2013 |
| Shipping Fees Subtotal: | 18.23 USD |
| Transportation | 13.15 USD |
| Fuel Surcharge | 1.88 USD |
| Residential Surcharge | 3.20 USD |

**4** Payment Information

Bill Shipping Charges to:    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 18.23 USD |
| Negotiated Total: | 7.56 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 22 Mar 2013    **Tracking Number:** 1Z22445X0294865770

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| V.A.L. Enterprises, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Jayesh Patel | Brenda Melendez | Brenda Melendez |
| 521 N. Cedar Bluff Road. | 22 Sylvan Way | 22 Sylvan Way |
| KNOXVILLE TN 379232805 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:9737538950 | Telephone:9737538950 |

**2  Package Information**

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1.  Letter | UPS Letter | | Reference # 1 - 006-1696 |

**3  UPS Shipping Service and Shipping Options**

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Tuesday, Mar 26, 2013 |
| Shipping Fees Subtotal: | **14.66 USD** |
| Transportation | 13.15 USD |
| Fuel Surcharge | 1.51 USD |

**4  Payment Information**

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 14.66 USD |
| Negotiated Total: | 5.70 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.